REX W. DUNNINGTON, Appellant, v. MARY M.
HUDSON et al.

Division One, February 25, 1909.

1. **TAXES: Payment: Payment of Judgment.** A payment by a
purchaser at a tax sale of the judgment for taxes and costs is
not a payment of taxes within the meaning of section 4268,
Revised Statutes 1899. So that where judgment was rendered
for the taxes for the years 1869 to 1876, and the land was sold
in 1881 thereunder for $4, and a deed made to the purchaser
(a stranger), and no taxes were paid by him or his grantees
thereafter or by the former owner after 1869, there was no pay-
ment of taxes within the meaning of the thirty-year Statute of
Limitations.
   *Held*, by WOODSON, J., dissenting, that the State's claim for
   taxes became merged in the judgment, and when the land
   was sold thereunder the State's lien ceased and the pur-
   chaser took the land free from a claim for taxes for the
   years embraced in the judgment, and the thirty years in
   which no taxes were paid should be held to begin to run
   from the last one of those years.

2. **TAX SALE: Against Former Owner: Color of Title: Posses-
   sion.** A sale of land for taxes assessed against a former owner,
   when there was a later owner, whose deed was of record at
   the time the taxes were assessed and judgment rendered, and a
   deed made to the purchaser at such sale, creates a color of title
   in such purchaser; and if he entered into possession under
   such deed and remains in possession for seven years prior to
   the bringing of a suit by the record owner, and pays taxes,

and such record owner had not paid taxes on the land for thirty years, such record owner cannot recover the land, though he had bought it at a former valid tax sale within thirty years before his present suit was brought.

Appeal from Benton Circuit Court.—*Hon. C. A. Denton*, Judge.

AFFIRMED.

*H. P. Lay* and *Wm. T. Johnson* for appellant.

(1) The sheriff's tax deed, which is the foundation of defendants' title, did not convey any title, because the judgment was not against the owner of the land, and the trial court found that the proceedings resulting in the tax deed, which is the foundation of plaintiff's title, were regular. Graves v. Ewart, 99 Mo. 17; Schulenburg v. Hayden, 146 Mo. 597. And, therefore, defendant was never at any time in the "lawful possession" of the land as required by Sec. 4268, R. S. 1899, but was a trespasser. (2) The right of plaintiff and those under whom he claims to pay taxes or to claim possession originated in May, 1881, and that being within the thirty years, section 4268 cannot apply. Howell v. Jump, 140 Mo. 457; Collins v. Pease, 146 Mo. 141; Hall v. French, 165 Mo. 440; Graham v. Ketchum, 192 Mo. 25; Weir v. Lumber Co., 186 Mo. 396; Haarstick v. Gabril, 200 Mo. 243. (3) The following decisions of this court treat a purchase at a tax sale as a payment of taxes. The purchase under which plaintiff holds was in May, 1881, within the thirty years. White v. Shell, 84 Mo. 573; Allen v. Buckley, 91 Mo. 161; Pitkin v. Reibel, 104 Mo. 505; Taft v. McCulloch, 135 Mo. 595.

*W. S. Jackson* for respondents.

(1) The quitclaim deed from Petts and Anna M. Boeschen was in all respects sufficient to constitute color of title in defendants, and they were in "lawful

possession'' of the land within the meaning of Sec. 4268, R. S. 1899, and they were not mere trespassers. Pharis v. Bayless, 122 Mo. 124; Shumate v. Snyder, 140 Mo. 84; Hickman v. Link, 97 Mo. 488; Mansfield v. Pollock, 74 Mo. 186; Perkins Land and Lumber Co. v. Irvin, 200 Mo. 490. (2) Plaintiff derives his title from Waldo P. Johnson, who purchased at sheriff's sale under an execution issued upon a judgment against Lucy S. Patrick for delinquent taxes for the years 1869 to 1876, inclusive. Johnson's deed was filed for record May 7, 1881. The statute, section 4268, began to run against Lucy Patrick in the year 1869, and it has continued to run against Waldo P. Johnson and those claiming under him until the filing of this suit, because neither Lucy Patrick nor Waldo P. Johnson, nor those claiming under Johnson, had paid any taxes from 1869 until this suit was filed, at the March term, 1905; nor had either of them ever been in possession and defendants had gone into lawful possession more than seven years prior to the filing of this suit, in good faith under a bona fide conveyance; had continuously held possession; improved the land, and paid the taxes thereon. Rothrock. v. Lumber Co., 80 Mo. App. 510; Collins v. Pease, 146 Mo. 135; Shumate v. Snyder, 140 Mo. 77; Pharis v. Bayless, 122 Mo. 116; Fairbanks v. Long, 91 Mo. 628; Campbell v. Greer, 209 Mo. 213; Binz v. Hyatt, 200 Mo. 299. (3) The purchase at the tax sale by Waldo P. Johnson was not a payment of the taxes. The costs in the tax proceedings were twenty-seven dollars and ten cents, and Johnson only paid the sum of four dollars for the eighty acres of land involved in this suit, and what he did pay under the law of this State should have been applied toward the payment of the costs, and not applied on the taxes. And this being the law, in the absence of evidence to the contrary, it will be presumed that the officers so applied it, in other words, that the officers did their duty under the

law. State ex rel. v. Smith, 13 Mo. App. 427; State ex rel. v. Wilson, 174 Mo. 511; State ex rel. v. Snyder, 139 Mo. 552.

GRAVES, J.—By the first count of his petition the plaintiff sues in ejectment for the possession of eighty acres of land in Benton county, in said petition particularly described. By a second count he asks the court to declare title as provided by section 650, Revised Statutes 1899.

Defendants answer each count separately. Answering the first count they first plead by way of general denial. Further answering said first count they plead that they are in the possession of said premises and went into the possession thereof in 1897 under a deed from Annie M. Boeschen and N. B. Petts to Mary M. Hudson, and during all said time were in the lawful possession thereof, and then invoke by appropriate terms section 4268, Revised Statutes 1899, being the thirty-year Statute of Limitations. The prayer was that the title be declared to be in Mary M. Hudson, and for all proper relief.

The answer to the second count was in terms the same as that to the first count, and the prayer the same.

By a third count in the answer the defendants pleaded that they had placed improvements on the premises in the sum of $200, and since the year 1896 had paid the taxes thereon, all of which had been done in good faith and under the belief that she was the rightful owner, and by prayer it is asked that in the event the court should find for the plaintiff she have judgment for such improvement and taxes.

Reply was general denial.

The trial court in entering its judgment made the following findings of fact, which accord with the evidence.

"Now on this day come the parties plaintiff and defendant by their attorneys, and a jury having been waived by both parties, plaintiff and defendants, this cause is now submitted to the court for final determination, and the court after hearing all the evidence adduced by both the respective parties and being fully advised in the premises doth find that Lucy S. Patrick is the common source of title. That she allowed the taxes to become delinquent upon the land in suit for the years 1869 to 1876 inclusive; that suit was brought by the collector of Benton county, in the name of the State, to enforce the State's lien therefor; that judgment was rendered for the amount of the taxes, and that on the 5th day of May, 1881, the land was sold by the sheriff, under a special execution for said taxes and costs; that at the said sale Waldo P. Johnson became the purchaser of said land for the price and sum of $4, and a deed was executed, conveying the said land to him. All the proceedings in this tax suit appear to be regular. The plaintiff claims title by mesne conveyances from the said Waldo P. Johnson. The defendant, Mary M. Hudson, claims title under a subsequent deed, executed by the sheriff of Benton county on a suit for delinquent taxes against the said Lucy S. Patrick, resulting from a sale in an action against the said Lucy S. Patrick, which suit was instituted several years after the deed to Waldo P. Johnson, plaintiff's grantor, was recorded. I find that neither the plaintiff nor his grantors paid any taxes on said land for more than thirty-one years prior to the institution of this suit. I find further that this land was uninclosed and unimproved, and not in the peaceable possession of any one until taken possession of by the defendant, Mary M. Hudson, in December, 1897, and that on that day the said Mary M. Hudson went into actual possession of the land under her tax deed, and has ever since, with her codefend-

ants, been in actual possession of said land, claiming to own the same. I find that about the year 1894-5 one Henry P. Lay, as an agent for the grantor of the plaintiff, who at that time claimed to own the land, went upon the land and spent several hours thereon for the purpose of inspecting the land for his principal, and seeing that no trespass was committed thereon; that he, after going over the land, requested a neighbor to keep an eye on the land for the purpose of preventing trespass.''

The trial court found against the plaintiff upon both counts of the petition, and decreed the title to be in Mary M. Hudson, and adjudged the costs against plaintiff. After timely motion for new trial had proved unavailing, the plaintiff duly appealed, and hence the cause is here.

I. The first question presented is as to whether or not there has been a payment of taxes by the plaintiff or his grantors within thirty years next preceding this suit. Lucy S. Patrick is the common source of title. May 5, 1881, under a judgment against Lucy S. Patrick for taxes for the years 1869 to 1876, inclusive, the property was sold and bought in by Judge Waldo P. Johnson for $4, the costs in the tax proceeding aggregating more than $27. It appears that no taxes were ever paid by Lucy S. Patrick or her subsequent grantees from a date prior to 1869 up to this suit, unless the payment of the $4 at this tax sale should be so held. If that was a payment of taxes, then defendants have no standing, and if not they may have, subject, however, to other questions raised.

Plaintiff cites us to several cases, of which White v. Shell, 84 Mo. 569, is a type, and contends that the court looks upon the payment made by a purchaser at a tax sale as the payment of taxes. These cases all construe the Revenue Act of 1872, under which there was no judgment of the character we have now

in tax proceedings, nor as we had in 1881, when this sale was had. Here we have the usual tax sale under a special execution, and a deed from the sheriff. Here we have the purchaser buying at a sheriff's sale, under a judgment of the circuit court, and under a provision of a statute, which says that the purchase price shall first be applied to the payment of costs, and then the surplus applied to the payment of the tax judgment. Under the law, in this particular case, there could have been no payment of taxes, because the amount paid and realized from the sale would not pay the costs.

But aside from that, under section 4268 we do not think that even the full payment of all costs and the judgment for taxes by a purchaser at a tax sale, by reason of his bid being equal to or in excess of the judgment and costs, is a payment of taxes within the meaning of the statute. This statute contemplates the voluntary payment of taxes by some person upon whom the moral and legal duty rests. It does not contemplate the payment by a stranger to the title and stranger to the moral and legal obligations, as is a mere purchaser at such a sale. A purchaser at a judicial sale is not paying taxes, but he is purchasing the judgment debtor's interest in lands, and for all such interest he may pay many times the amount of the taxes, or as in this case much less than the judgment.

After he acquires the title and thus the obligation to pay taxes, such purchaser can stop the running of the statute by the payment of the taxes, but such is not this case. For twenty-four years after the sale, no effort was made to thwart the statute by the payment of taxes, either prior or subsequent, by Judge Johnson and his grantees. Under the facts of this case no taxes have been paid by either plaintiff or his grantors for much more than thirty years.

II.   It is next contended that the defendants were never in the lawful possession of this land, and hence are not in a position to invoke section 4268.   Plaintiff claims that by the tax deed to Judge Johnson in 1881, which was recorded in 1881, the record title to the land was in Judge Johnson, and that the later tax suit, under which defendants' immediate grantors purchased, was not brought against the record owner, Johnson, but against Lucy S. Patrick, who was not the record owner, and hence no title passed to Boeschen and Petts, the purchasers at such sale, and they conveyed no title to the defendants, and hence there was no lawful possession.   Boeschen died, but by will the property was left to the wife, and she and Petts for an expressed consideration of $100 conveyed to defendant Mary M. Hudson, and under this deed the defendants took possession.   To our mind the question is, did this deed to defendant give color of title so as to make her possession lawful as distinguished from the act of a mere trespasser, rather than the question as to whether or not it conveyed a paper title?   These statutes of limitations were passed to meet cases where there was no paper title in the person in actual possession.   If the party enters under color of title, his possession is lawful, and his acts thereunder are not those of a mere trespasser, who enters without claim of title.   The question then is, does this deed from Boeschen and Petts and the preceding sheriff's deed show color of title?   Under our holdings we think they do.   In Hickman v. Link, 97 Mo. l. c. 488, we said: "Much is said in the books as to what will and what will not constitute color of title, and many of the cases are exceptional in their character.   Generally, it may be said that any writing which purports to convey the title to land by appropriate words of transfer, and describes the land, is color of title, though the writing is invalid, actually void, and conveys no title. [Fugate v. Pierce, 49 Mo. 441; Hamilton v. Boggess,

63 Mo. 233.]'' And along the same line are: Pharis
v. Bayless, 122 Mo. 116; Shumate v. Snyder, 140 Mo.
77; Mansfield v. Pollock, 74 Mo. 185; Perkins Land
& Lumber Co. v. Irvin, 200 Mo. 1. c. 490.

We conclude that defendants entered under a con-
veyance which gave color of title. For several years
they improved and claimed the property. Under such
circumstances their possession was lawful, and was
such a possession as is contemplated by section 4268.
We then have the defendants in the lawful possession
of the property for seven years, and we have no
payment of taxes made by the claimant or any person
under whom he claims for much more than thirty
years. Nor has any claimant nor any person
under whom he claims been in the possession of the
property for much more than thirty years. To our
mind it is a typical case under section 4268. This
is a statute of repose passed for a beneficent purpose,
and its purpose is fully exemplified in cases of the
character of the one at bar. [DeHatre v. Edmonds,
200 Mo. 246.]

On the facts before us the judgment *nisi* was cor-
rect, and such judgment is affirmed. *Lamm, P. J.,* and
*Valliant, J.,* concur; *Woodson, J.,* dissents in opinion
filed.


## DISSENTING OPINION.

WOODSON, J.—I dissent from the opinion here-
in for the reason that in my judgment when the State
of Missouri brought suit against the land to foreclose
its lien for taxes assessed against it, and secured a
judgment of the circuit court foreclosing that lien,
then by that act the lien of the State for taxes became
extinct and released from the land, and became merged
in the judgment of the court, which was from that
time on a judgment lien and not a tax lien, and that

when the State had a special execution issued on that judgment and sold the land to Johnson in satisfaction of that judgment and made him a deed in pursuance thereof, conveying the land to him, he thereby took the land free of all tax and judgment liens, for the reason that the judgment absorbed the tax lien, and the sale under execution issued on the judgment satisfied the judgment lien, thereby leaving the land clear of all taxes.

Such is not only the plain meaning of the statute regarding the sale of real estate for the collection of back takes, but it is the sensible and just view to be taken of those enactments, which must be taken and construed in connection with the thirty-year statute, which was designed to assist and facilitate the collection of taxes, and not to unjustly deprive the owner of his land by some interloper, under some pretext of right.

According to the majority opinion the judgment and sale of the land thereunder was not only a useless and farcical proceeding, but was also a trick and snare by which Johnson was tricked out of his money by the State. The Legislature realized that the land would not always sell for a sufficient sum to pay all the taxes due on the land, and expressly provided that in such cases the residue should be collected from the judgment debtor in the tax suit, thereby recognizing that the State had no further lien on the land.

Suppose Johnson, instead of having paid only $4 for the land, had bid a sum sufficiently large to have paid all the costs, taxes and penalties, would it be seriously contended that he would be required to go further and pay the taxes again to the collector in order to prevent some interloper from stealing or taking possession of the land and holding it one year, and thereby rob him out of it under the guise of the

thirty-year statute, aided by the trick aforesaid? I think not. There is not a particle of difference in the principle underlying the concrete case in hand and the supposed case.