BYRD v. HALL et al.

(Circuit Court of Appeals, Eighth Circuit. September 7, 1915. Rehearing Denied December 18, 1915.)

No. 4323.

1. FRAUDULENT CONVEYANCES ☞181—EFFECT AS TO CREDITORS—TITLE TO PROPERTY.

As to creditors a fraudulent conveyance is wholly void, and the legal as well as the equitable title remains in the grantor.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 554–559, 561–567; Dec. Dig. ☞181.]

2. EXECUTORS AND ADMINISTRATORS ☞329, 388—EFFECT OF DECREE SETTING ASIDE CONVEYANCE BY DECEDENT—JURISDICTION OF PROBATE COURT.

Under Rev. St. Mo. 1879, § 2360, which prohibited the issuance of execution against the property of a deceased person, but provided that a judgment or decree rendered against him in his lifetime should constitute a demand against his estate, to be proceeded on in the probate court, which by other statutory provisions was authorized to sell both personal and real property to pay debts generally, and also to order the sale of real estate on which judgments were liens for the payment of such judgments, where judgment creditors of a decedent obtained a decree setting aside a fraudulent conveyance made by him, the probate court had jurisdiction to order the land sold to pay the judgments, and the administrator's deed made on such sale conveyed a good title as against the fraudulent grantee and his heirs.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1052, 1059, 1342, 1350–1364, 1573–1582; Dec. Dig. ☞329, 388.

Construction and operation of decree setting aside fraudulent conveyance, see note to Byrd v. Hall, 117 C. C. A. 573.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. ADVERSE POSSESSION ⊜86—PAYMENT OF TAXES—STATUTORY PROVISIONS.

Under Rev. St. Mo. 1889, § 6770, which provides that 30 years' lawful possession of real estate shall bar an action for its recovery by an adverse claimant who has not been in possession or paid any taxes thereon during that time, the actual payment of taxes only will defeat the bar of the statute, and an offer to pay is unavailing, when the taxes are in fact paid by the one in possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 504; Dec. Dig. ⊜86.]

4. ADVERSE POSSESSION ⊜68—"LAWFUL POSSESSION"—COLOR OF TITLE.

"Lawful possession," under Rev. St. Mo. 1889, § 6770, which provides that 30 years' lawful possession of real estate shall bar an action for its recovery, means under color of title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 387–393; Dec. Dig. ⊜68.]

For other definitions, see Words and Phrases, First and Second Series, Lawful Possession.]

Sanborn, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

At Law. Action of ejectment by Abraham R. Byrd against George Allen Hall and the Decatur Egg Case Company. Judgment for defendants, and plaintiff brings error. Affirmed.

For opinion below, see 211 Fed. 182. See, also, 196 Fed. 762, 117 C. C. A. 568.

Wilson Cramer, of Jackson, Mo., and R. B. Oliver, Sr., of Cape Girardeau, Mo., for plaintiff in error.

John T. McKay, of Kennett, Mo., and Charles W. Bates, of St. Louis, Mo., for defendants in error.

Before SANBORN and HOOK, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. For convenience of reference we will again briefly state the long story that underlies this case. In May, 1871, William Sugg, "lawyer, merchant, and navigation contractor," was the owner of 20,000 acres of swamp land in Dunklin county, Mo. He was also largely indebted to creditors for goods sold and delivered. Suits were pending upon these debts, and a term of court at which they would pass into judgment was to convene May 29th of that year. On the 27th of May William Sugg executed and delivered a deed of the above-described lands to his brother, Wiley P. Sugg. The Supreme Court of Missouri (St. Francis Mill Co. v. Sugg, 206 Mo. 148, 104 S. W. 45) has found that this deed was executed for the purpose of hindering, delaying, and defrauding creditors, and that both parties to it were willful participants in the fraud. The creditors recovered judgments at the May term of court, which were docketed and became liens upon the lands covered by the deed. William Sugg died before the creditors discovered the property thus fraudulently conveyed. In April, 1875, however, they brought suit against Wiley Sugg to have the fraudulent conveyance canceled as

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an obstruction to the collection of their judgments. Before this suit came to trial Wiley Sugg died, and the case was revived against his administrator and heirs. August 20, 1880, a decree was entered, declaring the conveyance to be "fraudulent and void, and that the same be set aside and for naught held as to the plaintiffs herein as creditors of said William S. Sugg," except about 2,000 acres of the lands, "which are, by agreement of the parties herein, excepted and excluded, and said deed is not set aside" as to said 2,000 acres.

A motion for new trial was filed, but was left dormant until January, 1895. The Supreme Court of Missouri, having before it in the case above referred to a much fuller record of the transaction than is now before us, explained the reason why this motion was allowed to lie dormant, in the following language (206 Mo. 148, 104 S. W. 51):

"The trial was had, and the court indicated a judgment for plaintiffs; thereupon this motion for new trial was filed, no doubt accompanied with threats of an appeal. Then it was, in our judgment, that the agreement between counsel to exempt the 2,000 acres occurred, and then came the decree which was written up and entered. This will account for the fact that the motion was permitted to lie dormant so long. * * * We feel satisfied that the agreement was reached after the motion was filed, and the announced judgment of Judge Owen was modified into the decree as entered."

This explanation is consistent with the language of the decree and the conduct of the parties. It shows that the decree was the result of a compromise. The heirs of Wiley P. Sugg have enjoyed the fruits of that compromise. Both under the statute of Missouri against fraudulent conveyances and upon doctrines of equitable estoppel they ought, therefore, to be barred from questioning the application of the remainder of the lands to the satisfaction of the claims of creditors in whose favor that decree was entered. At that time the lands were of little value. In 1895 the value of the lands had greatly increased, and in the meantime the heirs had reached an age when they were interested in their own affairs. The motion was therefore revived and brought on for hearing. It is not necessary for us now to state the repeated trials of the case in the courts of Missouri, and the frequent appeals that were taken. It is sufficient that in July, 1907, the Supreme Court of that state, upon a full examination of the testimony, affirmed the decree. Mill Co. v. Sugg, 206 Mo. 148, 104 S. W. 45.

After the decree of August 20, 1880, was entered, the administrator of William Sugg's estate, at the instance of the judgment creditors, filed a petition in the probate court of Dunklin county, setting forth the recovery of their judgments, the entry of the decree, and the insolvency of the estate, and asking that an order be made for the sale of the lands in question, and that the proceeds, after paying expenses, be applied upon their judgments. The probate court, acting upon this petition, took the regular steps required by law for the sale of the lands. The sale was had, and a deed executed. The defendants here derive their title under that sale. The plaintiffs claim as heirs of Wiley Sugg, either directly or by subsequent conveyance.

For 37 years the plaintiffs here conducted the litigation as defendants which resulted in the final decision against them in the Supreme Court of Missouri above referred to. St. Francis Mill Co. v. Sugg, 206 Mo. 148, 104 S. W. 45. That case was decided in 1907. In 1910 the litigation was given a new lease of life by the present action of ejectment, brought by the defeated parties in the other suit to recover possession of one section of the land. The case has been in this court once before. Byrd v. Hall et al., 196 Fed. 762, 117 C. C. A. 568. On that review we reversed a judgment in favor of the defendants and sent the case back for a new trial. This second trial likewise resulted in a judgment in favor of the defendants, and the plaintiffs bring error.

We will take up the errors complained of in the order in which they are presented by counsel. They assert, first, that the trial court failed to give effect to the law of the case as declared in our former opinion; and, second, that the decision is wrong as matter of law, independently of our opinion.

Upon the first trial the defendants in their answer alleged that the lands were sold under the order of the probate court, on petition of the administrator, and for the purpose of paying all debts proven against the estate. It contained no averments showing that the sale was had at the instance of the judgment creditors who had obtained the decree of August 20, 1880, and for the sole purpose of paying their judgments. In support of the answer no evidence was offered, except the deed, which recited a sale of the lands for the payment of debts against the estate generally. After our reversal, the answer was amended so as to set forth the proceedings in the probate court fully. It alleged that the sale was on the petition of the judgment creditors and solely for the payment of their judgments. The first question now for consideration is whether these new allegations, and the evidence offered to support them, made such a case as would support the decision of the trial court, notwithstanding our former decision. We think it does. Our former decision is based upon the decisions of the Supreme Court of Missouri. We held that the transfer from William Sugg to his brother Wiley was valid as between the parties, their heirs, and personal representatives, and that the probate court of Dunklin county had no jurisdiction on the petition of the administrator to attack the conveyance or to sell the property to pay the general debts of William Sugg. Those were the issues that were then before us, and all language used in the opinion must be confined to them. We are now to decide whether, after the creditors had obtained a decree declaring the transfer to be void as against them, they could then apply to the probate court, in which their judgments had been allowed as claims, and ask the aid of that court to have the lands sold in payment of their judgments. That question was not passed upon when the case was here before.

A correct determination of the question now presented requires an examination of the statutes of Missouri and the decisions of its highest court.

[1] Section 5170 of the Revised Statutes of Missouri of 1889 provides as follows:

"Every conveyance * * * of any estate or interest in lands * * * made or contrived with the intent to hinder, delay or defraud creditors * * * shall be from henceforth deemed and taken, as against said creditors * * * to be clearly and utterly void."

Under this statute the conveyance from William to Wiley Sugg, as against his creditors, was a nullity. As to such creditors the title to the land, both legal and equitable, remained in the fraudulent grantor, precisely the same as if the conveyance had never been executed. They had all the rights and were entitled to all the remedies which would have been theirs if the conveyance had not been made. Bump, in his work on Fraudulent Conveyances, at sections 468 and 469, says:

"The theory of the law is that the fraudulent transfer is void as against creditors. For the purpose of enabling them to enforce their rights the title is deemed to remain in the debtor as though the transfer had never been made, and they may levy on the property and sell it as his property. If the creditors obtain judgments against the debtor after the transfer, they acquire liens upon his property wherever the same are given by law, according to the dates of their respective judgments in the same manner precisely as if no transfer had been made, *for the transfer is a nullity as against them, and the legal as well as the equitable title remains in the debtor for the purpose of satisfying his debts.*"

Freeman, in his work on Executions, at section 136, speaking of the title obtained at an execution sale of property fraudulently conveyed, says:

"The title transferred by such sale is not a mere equity, not the right to control the legal title and have the fraudulent transfer vacated by some appropriate proceeding. It is the legal title itself against which the fraudulent transfer is no transfer at all."

These text-writers express accurately the holding of the courts, many of whose decisions they cite. The Supreme Court of Missouri is in accord with their statements. Slattery v. Jones, 96 Mo. 216, 8 S. W. 554, 9 Am. St. Rep. 344. See, also, Bigelow on Fraud, vol. 2, page 395; Hall v. Stryker, 27 N. Y. 596–600.

Notwithstanding the fraudulent conveyance, the land in question was real estate of which William Sugg was "seised" at the time of his death, within the meaning of subdivision 5 of section 2354 of the Missouri Revised Statutes, which makes all real estate of which a debtor is "seised in law or equity" subject to sale on execution. The judgments obtained against him were liens upon the land precisely the same as if it had not been conveyed. Slattery v. Jones, 96 Mo. 216, 8 S. W. 554, 9 Am. St. Rep. 344.

It is sometimes said that the conveyance as to creditors is not void, but only voidable. Such statements arise out of two facts: First, the conveyance is valid as between the parties, and for that reason it seems inaccurate to speak of it as void, for if it were wholly void it could not be sustained in favor of the grantee. It is a mistake, however, to exalt the rights of a fraudulent grantee, so as to impair the rights of the creditors who were intended to be protected by the statute.

There is really no inconsistency in saying that the conveyance is valid as to the parties, but void as to creditors, because (1) the statute makes it void only as to creditors; and (2) the law, out of considerations of public policy, leaves the transaction to stand as between the parties because it will not aid either party to a fraudulent transaction. Second, though the transaction is void as to creditors, the property does not for that reason become their property, nor can it be applied to the payment of their debts except in some manner authorized by law. Bump on Fraudulent Conveyances, § 450. It is necessary, therefore, that the creditors take some affirmative action in order to have the property applied to the satisfaction of their debts, and this necessity gives some color to the claim that the conveyance is valid until attacked by creditors. A moment's consideration, however, will show that such action on the part of creditors cannot properly be treated as an invalidating of the fraudulent transfer. That is so for this reason: If the debtor had made no fraudulent conveyance, it would be necessary for creditors to take proper affirmative action in order to have the property applied to their debts. In either case they must proceed by execution and sale. If there has been a fraudulent conveyance, it may be necessary to have such conveyance canceled as a cloud upon the title. Such a decree, however, does not amount to a reconveyance of the title from the fraudulent grantee to the fraudulent grantor. It simply leaves the title in the fraudulent grantor and removes a cloud from it. Rutherford v. Carr, 99 Tex. 101, 87 S. W. 815.

At the time of his death, therefore, William Sugg was, as to his creditors, the owner of these lands, upon which their judgments were a specific lien. If the rights of these creditors have been changed, that result was not produced by the transfer but by the death of the fraudulent grantor. What was the effect of his death? Did it cause the judgments to cease to be liens upon the land, or cause the land, as to creditors, to cease to be the property of William Sugg? Such an event certainly ought not to impair vested rights.

[2] It is first urged that after Sugg's death there was but one remedy open to creditors to secure an application of these lands to the payment of their debts. They must go, it is said, into a court of equity, obtain a decree setting aside the conveyance as fraudulent, and then obtain a special execution upon that decree for the sale of the land. The statute of Missouri certainly made that a doubtful remedy. It provides:

"No execution shall issue upon any judgment or decree rendered against the testator or intestate in his lifetime, or against his executors or administrators after his death, which judgment or decree constitutes a demand against the estate of any testator or intestate, within the meaning of the statute respecting executors and administrators; but all such demands shall be classed and proceeded on in the court having probate jurisdiction, as required by said statute." Section 2360, Revised Statutes 1879.

Even if a special execution upon a decree setting aside a fraudulent conveyance would not come within the letter of this statute, it certainly would come within its spirit. The whole scheme of administration provided by the laws of Missouri contemplates that the entire

property belonging to a deceased person shall be applied to his creditors and passed to his heirs and devisees under the jurisdiction of the probate court. The scheme of those statutes rests upon the solid ground that the rights of all parties concerned in an estate can be protected in no other way. "The provisions of our administrative law" says the Supreme Court of Missouri, "whereby the whole estate of a decedent, both real and personal, may be subjected to the payment of his debts, were designed to entirely supersede the more cumbrous machinery of courts of equity." Titterington v. Hooker, 58 Mo. 593, 597; Priest v. Spier, 96 Mo. 111, 9 S. W. 12. That court in Zoll v. Soper, 75 Mo. 460, sustained the practice of applying property by means of a special execution upon a decree in equity; but it is noteworthy that the opinion contains no reference to the above statute.

Even if it were true that creditors might have sought a sale upon their decree, were they confined to that remedy? Under the Probate Code of Missouri, the debts of a decedent must first be paid out of his estate. His heirs and devisees have no claim upon the estate until such payment has been made. Real estate, the same as personal property, must be sold when necessary to discharge the claims of creditors. It is the primary duty of the probate court, and of the executor or administrator, to discharge these claims before applying any of the estate to heirs or devisees. By the ancient law executors and administrators did not represent creditors. They were called "personal representatives" because they represented the decedent and his heirs and devisees. All that, however, is changed by modern Probate Codes, and especially by the Code of Missouri. By its provisions the executor or administrator is primarily the representative of creditors. When the estate is insolvent, as was the case in William Sugg's estate, the administrator represents nobody but creditors, and the jurisdiction of the probate court is exercised solely on their behalf. Not only is this true generally, but special provisions are made for the payment of judgments which are a lien upon real estate. Section 183, subdivision 4, puts judgments in the fourth class of claims against the estate, and provides as follows:

"Judgments rendered against a deceased in his lifetime; * * * but if such judgments shall be liens upon the real estate of the deceased, and the estate shall be insolvent, such judgments as are liens upon real estate shall be paid as provided in sections 151, 152, 153, 154, 155, 156, 157, 158 and 159 without reference to classification, except the classes of demands mentioned in the first and second subdivisions of this section, shall have precedence over such judgments."

It is too clear for debate that at the time of his death the lands here in question, as to creditors, belonged to William Sugg. Under the decision of Slattery v. Jones, 96 Mo. 216, 8 S. W. 554, 9 Am. St. Rep. 344, their judgments were liens upon such lands. The estate was insolvent. The lands were sold by the probate court to satisfy those liens in strict conformity with the provisions of sections 151 to 159, above referred to. It would seem, therefore, that the court, by this statute, is expressly granted jurisdiction to make the sale, and that the purchaser acquired all of the estate in the land owned by William

Sugg at the time of his death. It is said, however, by counsel for plaintiff, that William Sugg did not own these lands at the time of his death; that the conveyance between him and his brother was valid as to the parties, and, therefore, no title to the lands passed to the estate of William Sugg. We think such a conclusion would defeat the very object of the statute of Missouri against fraudulent conveyances. Instead of protecting creditors it would exalt the rights of the parties to the fraudulent transfer above the rights of creditors for whose protection the statute was passed. Conceding that the transfer is valid, as between the parties, and that upon considerations of public policy the law will give no aid to either party to such a conveyance, that does not destroy the rights of creditors whose protection was the primary object of the statute against fraudulent conveyances. During William Sugg's life the law viewed these lands in a double light. As to creditors, the property belonged to William Sugg after the conveyance, the same as before. As to William Sugg and his brother, the land belonged to the latter. There is no difficulty in keeping up this dual aspect of the title after William Sugg's death, the same as before. To the extent that his administrator represents his creditors, the land was a part of his estate. To the extent that the administrator represented either the grantor or the grantee to the deed, or their heirs, or devisees, the conveyance was valid, and no interest in it passed to William Sugg's estate. The necessity for keeping up this dual aspect of the title was just as important after William Sugg's death as before. On principle, therefore, as to judgment creditors of William Sugg, the probate court, under the statutes of Missouri, had jurisdiction to cause these lands to be sold and applied to the satisfaction of the claims of such judgment creditors.

These would seem to be necessary conclusions from the statutes of Missouri were it not for certain decisions of the Supreme Court of that state. Those decisions are referred to in our former opinion. They are George v. Williamson, 26 Mo. 190, 72 Am. Dec. 203; Hall v. Callahan, 66 Mo. 316; Zoll v. Soper, 75 Mo. 460. These decisions hold that a conveyance intended to defraud creditors is valid as between the parties, and that executors and administrators are so far personal representatives of the grantor that they cannot maintain a suit to set aside the conveyance, although acting on behalf of creditors. They further hold that the probate court has no jurisdiction to cause lands thus fraudulently conveyed to be sold for the satisfaction of *the general debts of an estate.* These decisions announce rules of property which are binding upon the federal courts. We accepted them in our former decision and accept them now. For reasons already explained, however, we do not think these decisions should be extended. They have never been applied by the Supreme Court of Missouri to a case like that here under review. On the contrary, that court has in language which we held to be obiter in our former opinion, sustained the jurisdiction of the probate court. St. Francis Mill Co. v. Sugg, 169 Mo. 130, 69 S. W. 359. That was one of the appeals in the case which finally resulted in the affirmance of the decree of August 20, 1880. The court there said:

"Appellants now advance the point that assets conveyed by an intestate in fraud of his creditors are not available to the administrator to pay debts, and George v. Williamson, 26 Mo. 190 [72 Am. Dec. 203], Hall v. Callahan, 66 Mo. 316, and Zoll v. Soper, 75 Mo. 460, are cited to sustain the point. Those cases go no further in the direction contended for than to hold that an administrator, as to the acts of his intestate, stands in his shoes, and cannot assail his deed for fraud, even though it be to recover assets to pay creditors of the estate. But there is no authority for the proposition that creditors may not assail a deed made to defraud them by their deceased debtor in his lifetime, and when the deed is set aside at their suit that the administrator may not treat the property thus uncovered as assets of the estate."

An examination of the original record and briefs in the case in which this language was used shows that the issue was more comprehensive than would be usual in such a suit. The issues unfolded as follows: The suit was brought by judgment creditors charging that the conveyance from William to Wiley Sugg was made for the purpose of hindering, delaying and defrauding them. The answer denied the fraud, and alleged that Wiley Sugg was a good faith purchaser. It set up as a second separate defense that plaintiffs' judgments were barred by the statute of limitations. Under their reply plaintiffs met this second defense upon two grounds: First, that the judgments were not barred at the time the suit was commenced, and that the beginning of the suit and not the time of trial should be looked to in determining whether the judgments were barred. Second, they asserted that plaintiffs were in the main purchasers of the land at the probate sale, and that the suit was now being maintained by them as such purchasers, or on behalf of such purchasers, in the name of the original plaintiffs, and for the purpose of protecting the title obtained at the probate sale. To meet this second claim of the plaintiffs, the defendants contended that the probate sale was void, that the court had no jurisdiction to make it, and that the plaintiffs could not maintain the suit either as purchasers or on behalf of the purchasers. To support the issue thus raised the entire proceedings of the probate court were offered in evidence. The question was fully argued in the briefs, and in deciding it the language which we have quoted from the opinion of the Supreme Court of Missouri was used. Looked at in this way, the language would not seem to be obiter. For some reason, on the trial of the present case, there was no direct evidence that the litigation in the courts of Missouri was in fact maintained by and on behalf of the purchasers at the probate sale. If such a showing had been made, it would then be clear that the decisions in 206 Mo. 148, 104 S. W. 45, and 169 Mo. 130, 69 S. W. 359, would be res adjudicata of the matters here involved. The only reason for saying that those decisions were not res adjudicata of the title acquired under the probate sale is that the purchasers were not parties to the record; but if the litigation was maintained by them, or in their behalf with their knowledge, the judgment would be binding on them. Black on Judgments, § 541. Rogers, under whom defendants claim, was a plaintiff in the St. Francis Mill Co. Case, and a purchaser at the probate sale. The Supreme Court of Missouri, in 169 Mo. 130, 69 S. W. 359, uses this language as to the showing on the trial there under review:

"The lands were sold by the administrator, and *the plaintiffs became the purchasers.*"

It thus appears that the litigation was then being carried on by the purchasers at the probate sale, and thus the decision would be binding upon them as purchasers as well as original plaintiffs on the record in the equity suit. The language which we have quoted was the unanimous opinion of the highest court of the state. We held, when the case was here before, that property uncovered by judgment creditors could not be treated "as general assets of the estate." That was the question shown by the record then before us, and all, language in our former opinion is to be restrained accordingly. We now hold that a proper construction of the statutes of Missouri sustains the jurisdiction of the probate court upon the facts which are presented by the present record, and that there is nothing in the decisions of the highest court of Missouri, or in the decision of this court, which is in conflict with this holding.

[3, 4] Defendants also established a perfect title under the 30-year statute of limitations of Missouri (section 6770, Revision of 1889), which reads as follows:

"Whenever any real estate, the equitable title to which shall have emanated from the government more than ten years, shall thereafter, on any date, be in the lawful possession of any person, and which shall or might be claimed by another, and which shall not at such date have been in possession of the said person claiming or who might claim the same, or of any one under whom he claims or might claim, for thirty consecutive years, and on which neither the said person claiming or who might claim the same nor those under whom he claims or might claim has paid any taxes for all that period of time, the said person claiming or who might claim such real estate shall, within one year from said date, bring his action to recover the same, and in default thereof he shall be forever barred, and his right and title shall, ipso facto, vest in such possessor."

The court found in favor of the defendants under the plea of this statute, and the evidence abundantly supports the finding. It is conceded that the title emanated from the government, and that the statute covers legal as well as equitable titles. Collins v. Pease, 146 Mo. 135, 47 S. W. 925. Neither the plaintiffs nor any person under whom they claim were in possession of the land at any time for more than 40 years preceding the bringing of this action. In 1898 the defendant, Decatur Egg Case Company, went into actual possession and began cutting timber on the land. In 1904 it constructed a house upon the property which has since been continuously occupied by its tenants. Plaintiffs have never paid any taxes upon the property. The defendant and its predecessors in title, since the sale of the property pursuant to the order of the probate court, have paid all such taxes. These facts make a perfect title under the statute. The term "possession," used in section 6770, refers to the actual possession or occupation of the property. So-called "legal" possession—that is, the possession which the law attaches to the ownership of real property for certain purposes—would not avail either the plaintiff or defendant under this statute. This is manifestly so. Otherwise it would be impossible for the bar of the statute ever to

create a title as against the owner of the fee. After obtaining a decision in their favor in some of the trial courts, in the St. Francis Mill Company Case, plaintiffs applied to the taxing officers of the county, and requested that the lands be assessed to them, and on two or three occasions they offered to pay the taxes. The lands, however, were during all this period assessed to the defendant, and the taxes paid thereon by it, and for this reason the collector refused to accept payment from the plaintiffs. These efforts on their part constitute their only defense against the bar of the statute. They are insufficient. The statute deals only with the actual payment of taxes, and nothing else will defeat its bar. Dunnington v. Hudson, 217 Mo. 93, 116 S. W. 1083. In order to protect their title plaintiffs were not confined to the payment of taxes. It was open to them to bring an action to recover the property within the period fixed by the statute. This they failed to do. Lawful possession, as used in the statute, means possession under color of title. Dunnington v. Hudson, supra; Collins v. Pease, 146 Mo. 135, 47 S. W. 925. Defendant's title was clearly sufficient to meet that requirement.

The judgment is affirmed.

SANBORN, Circuit Judge (concurring). Because I am of the opinion that all the questions in this case, except those arising under the 30-year statute of limitations of Missouri (section 6770, Revision of 1889), were presented to, considered, and decided by this court in Byrd v. Hall et al., 196 Fed. 762, 117 C. C. A. 568, and because I am also of the opinion that the deed of William Sugg was, as to creditors, voidable and not void, that it was valid until avoided and not void until validated, that William Sugg did not die seised of the lands conveyed by that deed, that the probate court was without jurisdiction to sell those lands as part of his estate, and that the administrator's deed of them was void, as this court held in that case, I dissent from that part of the foregoing opinion which treats of these subjects. But I concur in the conclusion that the defendants' title may be sustained under the 30-year statute of limitations.