David A. ROBERTSON, Sarah C. Surratt, and Joseph M. Robertson, Appellants,

v.

David Lee MAUZEY, Charles William Mauzey and the Unknown Heirs, Devisees, Grantees, Assignees, Donees, Alienees, Legatees, Administrators, Representatives, Guardians, Conservators, Mortgages, Trustees, Successors, and Assigns, of Leola Mauzey, and All Other Persons, Corporations, or Successors Claiming By, Through, or Under Leola Mauzey or any of Them, Respondents.

WD 79039

Missouri Court of Appeals, Western District.

Filed: May 9, 2017

William J. Daily, Glasgow, MO for appellants.

Lesa L. Bonnett, Macon, MO for respondents.

Before Division Three: Alok Ahuja, P.J., and Victor C. Howard and James E. Welsh, JJ.

Alok Ahuja, Judge

David A. Robertson, Joseph M. Robertson, and Sarah C. Surratt (the "Robertsons") appeal from a judgment entered by the Circuit Court of Chariton County, which rejected their claim of adverse possession against David Lee Mauzey and Charles William Mauzey (the "Mauzeys") following a bench trial. We reverse.

## Factual Background

This appeal concerns the ownership of a parcel of real estate totaling 530 acres and located in Chariton County ("the Property"). The Robertsons, three siblings, con-

tend that they own the entire property. The trial court instead found that the Mauzeys own an undivided 1/12 interest in the Property.

The ownership dispute dates back to a conveyance made in 1931. On October 21, 1931, David C. Robertson, a widower, conveyed the Property by warranty deed in equal shares to his six children: David Hurley Robertson, Fred Robertson, Nellie Glenn, Melber Robertson, Carrie Shackelford, and Leola Mauzey. The 1931 conveyance was subject to David C. Robertson's life estate.

"The Robertsons" are the three children of David Hurley Robertson and his wife Naomi Robertson. The Mauzeys' purported interest in the Property derives from the share deeded in 1931 to Leola Mauzey.

The following diagram illustrates the relevant family relationships.

At the time of the 1931 deed, Leola Mauzey was married to David Mauzey. The couple had no children together. Leola Mauzey died in 1933. Leola Mauzey's estate was not probated, and she did not convey her interest in the Property to anyone before her death. At the time of Leola Mauzey's death, the Property remained subject to David C. Robertson's life estate.

After Leola Mauzeys' death, David Mauzey married Marguerite Mauzey. The couple had two children, the Mauzeys.

David C. Robertson died on February 12, 1938.

On May 24, 1952, Fred Robertson died intestate, leaving no spouse or children. His interest in the property passed in equal shares to his four surviving siblings: David Hurley Robertson, Nellie Glenn, Melber Robertson, and Carrie Shackelford.

In 1954 Melber Robertson conveyed "a ¼ interest" in the Property to David Hurley Robertson and his wife Naomi Robertson. Nellie Glenn and Carrie Shackelford followed suit in 1956 and 1959 respectively, each conveying a ¼ interest in the Property to David Hurley Robertson and Naomi Robertson. The three deeds were publicly recorded. Presumably, the siblings transferred *one-quarter* interests in the Property in these transactions, rather than one-fifth interests, because they believed that Leola Mauzey's interest had been extinguished when she predeceased her father, or that her interest had been transferred by intestate succession to her father and surviving siblings, and then to the surviving siblings on David C. Robertson's death. As a result of the 1950's conveyances,

David Hurley Robertson and his wife Naomi Robertson owned the entirety of the Property, with the possible exception of any interest owned by Leola Mauzey or her heirs.

David Mauzey died on August 19, 1974. His second wife, Marguerite, predeceased him, and thus the Mauzeys were his sole heirs. David Lee Mauzey acted as the executor of his father's estate. The inventory for David Mauzey's estate did not list any interest in the Property.

On October 4, 1977, David Hurley Robertson and Naomi Robertson conveyed the whole title to the Property to themselves as husband and wife. (Prior to that time, David Hurley Robertson had individually owned the share of the Property he received in the 1931 conveyance from his father.) The 1977 conveyance was made by Warranty Deed, and was publicly recorded.

David Hurley Robertson died in 1988, and Naomi Robertson died on September 9, 1993. The Property was distributed to the Robertsons by a court order of distribution in the probate estate of Naomi Robertson. This order was recorded on August 10, 1994.

The 150 acres of farmland on the Property is currently operated by Bill Hayes, grandson of Carrie Shackelford, on behalf of the Robertsons. Hayes has taken care of the Property since the 1970's, farming it on a crop-share basis. Hayes testified that the Property is known as the Robertson farm, and that he frequently asks people to leave the Property on behalf of the Robertsons. Hayes testified that he does not know the Mauzeys, and believed the Property to be owned and controlled entirely by the Robertsons.

In anticipation of a possible reorganization or sale of their interests in the Property, the Robertsons obtained an informational title commitment from Chariton Abstract & Title Company in 2013. The title company reported that the Property was owned by the Robertsons and Leola Mauzey. Further investigation revealed the identity of the Mauzeys, and their relationship to Leola Mauzey.

The Robertsons filed a petition to quiet title against the Mauzeys, asserting a claim of adverse possession.

Following a bench trial, the circuit court entered its judgment, which rejected the Robertsons' claim of adverse possession, and ruled that the Mauzeys held an undivided 1/12 interest in the Property.

The court concluded that, when Leola Mauzey died without children in 1933, her surviving husband David Mauzey took one-half of her 1/6 interest in the Property by operation of the intestate succession laws, with the other half passing in equal shares to Leola's father David C. Robinson and to her five surviving siblings. The circuit court held that after David Mauzey's death in 1974, his 1/12 interest passed to his two children, the Mauzeys.

The circuit court found that the Robertsons were not aware of the Mauzey's potential interest in the Property until the title search was conducted in 2013, and that the Mauzeys were not aware of their potential interest until they were served with the quiet title action in 2015.

The judgment found that

> [The Robertsons] have satisfied any and all tax obligations arising from the [Property] from at least 2000 to the present. [The Robertsons] or their respective agents have farmed, operated, and otherwise maintained the [Property] for at least as many years. [The Robertsons] or their respective agents have derived all profits and paid all expenses relating to the [Property] from at least 1989 to the present.

The judgment also found that "[the Mauzeys] have contributed no funds of any kind in regards to the maintenance, upkeep, or tax obligations arising from the [Property]," and "have received no benefits or profits from the operation of the [Property]."

Despite its findings concerning the Robertsons' long-standing and exclusive possession and control of the Property, the trial court concluded that the Robertsons had failed to prove that they acquired the Mauzeys' 1/12 interest by adverse possession. The court first noted that the Robertsons and the Mauzeys were cotenants, and that, in the case of a cotenancy, "Missouri law presumes that tenants in common, who go into possession of realty, do not do so adversely" to other cotenants. The court held that this presumption of permissive occupancy by a cotenant can be rebutted. To rebut the presumption of permissive occupancy, however, the plaintiff "must show the actual knowledge of the real owner that he claims in opposition and defiance of his title, or he must show such an occupancy and use, so open and notorious and inconsistent with, as well as injurious to[,] the rights of the true owner that, from such facts, the law will authorize a presumption of such knowledge reposing in the true owner."

The circuit court concluded that the Robertsons had failed to satisfy this standard. The court found that "[t]here was no credible evidence presented of any kind that notice was ever given to David Mauzey or [the Mauzeys] by any one or more of [the Robertsons] or their predecessors in title that they intended to dispossess [the Mauzeys] of their interest in the [Property]." The judgment stated that, "[w]hile it is true that [the Robertsons] did everything in regards to the [Property] that a sole, responsible owner would do, they did nothing to bring their intention to dispossess [the Mauzeys] of their respective share until they served them with this litigation." In particular, the judgment found that "[t]here has been no evidence presented in this case of any recorded deeds that somehow dispossessed [the Mauzeys] of their respective interest."

The Robertsons appeal.

## Discussion

The Robertsons raise four Points on appeal. In their first Point, the Robertsons argue that the trial court erred in finding that David Mauzey inherited a 1/12 interest in the Property by intestate succession on Leola Mauzey's death in 1933, because David Mauzey took no "affirmative action" to claim his spousal share. The Robertsons' final three Points argue that the trial court erred in finding that they failed to meet their burden to establish adverse possession. Because we conclude that the Robertsons established their claim for adverse possession, it is unnecessary for us to address their first Point.

In a court-tried case, this court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). All evidence favorable to the judgment and all inferences to be drawn from the evidence are accepted as true, and all contradictory evidence is disregarded. This court defers to the trial court's determination of the credibility of witnesses and the weight to be given to their testimony.

*Murphy v. Holman*, 289 S.W.3d 234, 237 (Mo. App. W.D. 2009) (other citations and internal quotation marks omitted).

[T]he five fundamental elements necessary to constitute effective adverse possession are (1) the possession must be

hostile and under a claim of right, (2) it must be actual, (3) it must be open and notorious, (4) it must be exclusive and (5) it must be continuous. Note the elements are stated in the conjunctive, and the lack of any one element (particularly hostil[ity] ) defeats the claim of adversity.

*Tallent v. Barrett*, 598 S.W.2d 602, 606 (Mo. App. S.D. 1980) (citations omitted); *see also, e.g., Watson v. Mense*, 298 S.W.3d 521, 526 (Mo. banc 2009); *DeVore v. Vaughn*, 504 S.W.3d 176, 181–82 (Mo. App. W.D. 2016).

 The plaintiff's burden of proof to establish adverse possession is heightened when the plaintiff and defendant are cotenants.

> While it is true ... a tenant in common can acquire title by adverse possession against his cotenants the burden on such a claimant is a heavy one. The evidence of such adverse possession must be clear and pointed. Cogent proof is required to overcome the presumption that the claimant holds possession for his cotenants. The acts, verbal or otherwise, to show an adverse claim must be acts clearly repudiating and denying the rights of the cotenant.

*Higgerson v. Higgerson*, 494 S.W.2d 374, 379 (Mo. App. S.D. 1973).

The circuit court's judgment made factual findings which establish four of the five elements of an adverse possession claim: the judgment expressly found that the Robertsons' actually possessed the Property, and that such possession was open and notorious, exclusive, and continuous. The sole basis for the circuit court's rejection of the Robertsons' adverse possession claim was its conclusion that their possession was not "hostile" to the Mauzeys' interest, given the parties' status as cotenants.

The heightened burden of proof which generally applies in the case of adverse possession claims among cotenants is not applicable here, however, because the Robertsons were unaware of the Mauzeys' potential interest as cotenants, and possessed the land under color of title.

The circuit court found that neither the Robertsons nor the Mauzeys were aware of the Mauzeys' potential interest in the Property until almost twenty years after the Robertsons acquired their interests from their mother Naomi Robertson's estate in 1994.

 Moreover, although the circuit court's judgment states that no evidence was presented "of any recorded deeds that somehow dispossessed Defendants of their respective interest," and that the Robertsons had presented "no colorable title," those conclusions are inconsistent with the court's own factual findings. "Generally it may be said that any writing which purports to convey the title to land by appropriate words of transfer, and describes the land, is color of title, though the writing is invalid, actually void, and conveys no title." *Dunnington v. Hudson*, 217 Mo. 93, 116 S.W. 1083, 1085 (Mo. 1909) (citations and internal quotation marks omitted); *see also, e.g., Moran v. Roaring River Dev. Co.*, 461 S.W.2d 822, 829–30 (Mo. 1970) (quoting *Jamison v. Wells*, 7 S.W.2d 347, 348 (Mo. 1928)).

The circuit court's judgment expressly noted the existence of multiple recorded conveyance documents which purported to transfer the entirety of the Property to the Robertsons and their parents. Thus, the judgment found that, in the 1950s, at a time when only four of David C. Robinson's children were then living, three of those children conveyed one-quarter interests in the property to David Hurley Robertson and Naomi Robertson as husband and wife. Those 1950's deeds, which were

recorded, reflect that the four surviving siblings each claimed to own one-quarter interests in the Property; the siblings' ownership claims were flatly inconsistent with any interest remaining in the heirs of Leola Mauzey. Moreover, in 1977, David Hurley Robertson and Naomi Robertson purported to transfer the entire Property to themselves, as husband and wife, by recorded Warranty Deed. In the 1977 Warranty Deed, the couple "covenant[ed] they they are lawfully seized of an indefeasible estate in fee of the premises herein conveyed," and recited that "they have good right to convey the same," and "that the said premises are free and clear from any incumbrance done or suffered by them or those under whom they claim." Finally, the Order of Distribution in the probate proceeding involving Naomi Robertson's estate, which was recorded in 1994, expressly states that at the time of her death Naomi Robertson owned the entirety of the Property, and that undivided 1/3 interests in the Property were distributed to each of the Robertsons. The statements in the judgment that there are no recorded deeds dispossessing the Mauzeys of their 1/12 interest, and that the Robertsons had failed to demonstrate that they possessed the Property under color of title, are contrary to the undisputed documentary evidence.

In these circumstances—where the Robertsons possessed the Property under color of title and ignorant of the Mauzeys' potential interest—the heightened burden of proof in cases of adverse possession between cotenants is inapplicable. In *Wunderlich v. Baumgarth*, 437 S.W.2d 78 (Mo. 1969), the Supreme Court addressed an adverse possession claim by the Wunderlichs, who possessed property under a deed which contained a condition which was not satisfied. If the deed was ineffective, the Wunderlichs actually owned the property as tenants in common with other

relatives, including appellant Baumgarth. The Supreme Court refused to "determine the legal effect of the deed." *Id.* at 81. Instead, it held that—even assuming the Wunderlichs and Baumgarth were tenants in common—the Wunderlichs had established a claim for adverse possession. *Id.*

The Court noted the caselaw holding that a heightened burden of proof applies to adverse possession claims between cotenants. It held that this rule was inapplicable in the case before it, however.

> [W]e think that rule is usually applicable in the cases where it is recognized that the party going into possession is actually a tenant in common. We do not think the rule is strictly applicable in this case. Here, John [Wunderlich] went into possession under a deed which purported to convey the whole title and it, at the least, constituted color of title. ... [I]f one enters under color of title, claiming the whole for himself, and other necessary conditions of adverse ownership concur, his possession will be adverse to his cotenant.

437 S.W.2d at 81 (citation and internal quotation marks omitted).

The Eastern District of this Court followed *Wunderlich* in *Rector v. Missouri Department of Natural Resources*, 685 S.W.2d 225 (Mo. App. E.D. 1984). In *Rector*, the Department of Natural Resources ("DNR") took title to certain land under a deed which purported "to convey an entire interest in the land." *Id.* at 226. The party who conveyed the property to DNR only possessed an undivided one-half interest, however. *Id.* Although DNR and the holders of the other one-half interest were effectively tenants in common, the Court refused to apply any heightened proof standard to DNR's adverse possession claim. It explained that "[t]he DNR here had color of title for an absolute interest in

the tract. Based on *Wunderlich*, we will analyze the facts under normal adverse possession rules." *Id.* at 228.[1]

 Under "normal adverse possession rules," the Robertsons' possession of the Property was "hostile" to the interests of all others, including the Mauzeys.

> To satisfy the hostile element, the claimant must show that he intended to occupy the disputed parcels as his own. Hostile possession does not imply ill will or acrimony. In other words, it is not necessary that the claimant intend to take the property away from the true owner. Instead, it is the intent to possess, and not the intent to take irrespective of his right, which governs.

*Brasher v. Craig*, 483 S.W.3d 446, 451–52 (Mo. App. W.D. 2016) (citations and internal quotation marks omitted); *see also Sleepy Hollow Ranch LLC v. Robinson*, 373 S.W.3d 485, 496 (Mo. App. S.D. 2012).

 The findings in the circuit court's judgment satisfy these standards. As the circuit court found, the Robertsons and their parents occupied the Property exclusively, continuously, and openly for approximately sixty years. The Robertsons and their parents possessed the Property under a chain of title which purported to give them full ownership. During the period of the Robertsons' possession, they paid all tax obligations associated with the Property; farmed, operated and maintained the Property; and "derived all profits and paid all expenses relating to the [Property] from at least 1989 to the present." Bill Hayes, who had farmed the Property since the 1970's, testified that he frequently asked people to leave the Property on the Robertson's behalf. In the language of the judgment, "[the Robertsons] did everything in regards to the [Property] that a sole, responsible owner would do." This was sufficient to establish that their possession was "hostile" under the standards generally applicable to adverse possession claims. Thus, the circuit court's factual findings establish that the Robertsons proved all five necessary elements of their adverse possession claim.[2]

---

1. The fact that the Robertsons were unaware of the Mauzeys' potential interest in the Property, and possessed the Property under color of title, distinguishes this case from *Allen v. Allen*, 687 S.W.2d 660, 661 (Mo. App. S.D. 1985), and *Tallent v. Barrett*, 598 S.W.2d 602 (Mo. App. S.D. 1980), on which the circuit court relied.

 The circuit court also suggested that the Robertsons shouldered a higher burden to prove "hostile" possession because the Robertsons and the Mauzeys were members of the same family. The testimony indicates that the Robertsons and the Mauzeys did not know each other, however, and they are not related by blood. Instead, their only familial connection comes from the fact that the Mauzeys' father was previously married to the Robertsons' aunt. Such distant or tenuous family relationships do not give rise to a presumption of permissive use. *Tiemann v. Nunn*, 495 S.W.3d 804, 812 (Mo. App. E.D. 2016) (citing *Soderholm v. Nauman*, 409 S.W.3d 382, 392 (Mo. App. W.D. 2013)).

2. Even if this case were governed by the special adverse possession rules applicable to cotenancies, we question the circuit court's conclusion that the Robertsons failed to prove "hostile" possession. The judgment emphasizes that "[t]here was no credible evidence presented of any kind that notice was ever given" by the Robertsons to the Mauzeys of the Roberstons' intention to dispossess the Mauzeys. But such affirmative notice is not required. "[I]t is not necessary that any positive notice should be given to the cotenant, or that it devolves upon the possessor to prove a probable actual knowledge on the part of the co-tenant. It is sufficient that the act itself is *overt, notorious*; and if the cotenant is ignorant of his rights or neglects them, he must bear the consequences." *Replogle v. Replogle*, 350 S.W.2d 735, 738 (Mo. 1961) (quoting *Mann v. Mann*, 353 Mo. 619, 183 S.W.2d 557, 560 (Mo. 1944)); *see also Warfield v. Lindell*, 30 Mo. 272, 282 (Mo. 1860). Moreover, recording of a deed which is inconsistent with the existence of the cotenant's interest may be sufficient to establish "ouster" of the cotenant

## Conclusion

As the circuit court's judgment observes, "[i]n this case, the facts are straightforward and uncontested." The dispute in this case involves the legal consequences flowing from the acknowledged facts. As explained above, the circuit court applied an overly exacting proof standard to the Robertsons' adverse possession claim. Under the appropriate substantive standards, the circuit court's factual findings establish the Robertsons' right to judgment. We accordingly reverse the judgment of the circuit court, and remand the case to that court with directions that it enter judgment for the Robertsons on their claim of adverse possession.

All concur.

from the property, even if the plaintiff-cotenant's initial possession of the property is presumed to be permissive. *Long v. Stapp*, 49 Mo. 506, 508 (Mo. 1872) ("[D]efendant took a conveyance from his grantor, assuming to convey to him as sole owner the entire 640 acres. This amounted to an ouster of his co-tenant, and the statute commenced running from that time."); *Cash v. Gilbreath*, 507 S.W.2d 931, 935 (Mo. App. 1974).