MOFFAT v. SMITH, U. S. Marshal, et al.

(Circuit Court of Appeals, Eighth Circuit. April 30, 1900.)

No. 1,309.

1. CORPORATIONS—TRUST FUND—DISSOLUTION—APPLICATION OF ASSETS.

The owner of all the stock of a corporation, who, pending the determination of an action for a tort against the corporation, which subsequently results in a judgment against it, procures the corporation to convey all its assets to him in consideration of the surrender and cancellation of his stock, has not such an equity as will enable him to maintain a bill to enjoin the judgment creditor from selling on execution against the corporation the assets so conveyed, on the ground that such sale would create a cloud on the transferee's title, since such conveyance does not affect the right of the corporation's creditors to subject its assets to the payment of their claims.

2. APPEAL—AFFIRMANCE.

The appellate court will affirm a judgment of the trial court, if correct, though by the latter decided on erroneous ground.

Appeal from the Circuit Court of the United States for the District of Colorado.

On October 26, 1883, John Munson, the appellee, recovered a judgment in the circuit court of the United States for the district of Colorado against the Henriett Mining & Smelting Company, Limited, of London, England, on account of personal injuries sustained by him through the negligence of the company while working in its mines. On June 13, 1885, an execution was issued on this judgment and placed in the hands of the United States marshal, who levied the same upon the Henriett lode-mining claim, and advertised the same for sale under the levy. The appellant thereupon filed the bill in this cause, and obtained a temporary restraining order enjoining the appellees from selling the mining claims levied on under and by virtue of the execution in the hands of the marshal in favor of the appellee Munson. The bill alleges that on October 10, 1883, before the rendition of Munson's judgment against the mining company, the mining company had sold and conveyed by deed all of its property, including the above mining claim, to appellant, for £250,000; that the deed was filed for record in the proper recorder's office in Lake county, Colorado, in which this mine is situated, on November 3, 1883; that for this reason the mining claim is not subject to seizure and sale under the execution; and that the sale thereof would cast a cloud on appellant's title. Upon this ground he prayed that the injunction be made perpetual. The answer admitted the recovery of the judgment, and the issue of the execution and levy on the mine, also that a deed for the same had been executed by the mining company to the appellant, but charges that the title was taken by him only as trustee, and subject to the appellee's judgment. It further charges that the mine had originally belonged to appellant and certain other parties, and that it was by them sold to the mining company, a corporation created under the laws of Great Britain, for the purpose of selling it; that the stock was sold to certain parties, with certain guaranties; and that afterwards the parties became dissatisfied, and they reconveyed the property to

the appellant. A replication was filed and testimony taken, and upon final hearing the injunction was dissolved and the bill dismissed, from which decree this appeal was taken.

Branch H. Giles and Gerald Hughes (Charles J. Hughes, Jr., on the brief), for appellant.

A. S. Blake, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

One who acquires all the stock of a corporation cannot extinguish the debts of the corporation, or exempt its property from liability for the payment of its debts, by taking a conveyance of its property to himself, and canceling the stock of the corporation, or procuring its dissolution. From the testimony of the appellant it appears that, while the corporation owned the mining claims, he purchased all the shares of the corporation, and thereupon, in his own language—

"After I had gotten all the stock, I could not see the propriety of a continuation of the company in England, so I asked for a liquidator. That was given me,—a liquidator appointed, who deeded the property back."

Further on he testifies:

"Q. To whom did you apply to have the company dissolved, and how? A. Francis Andrews acted for me,—as my agent and broker. Q. Was he an officer in the company? A. Yes, sir; he was secretary. Q. And he acted as your broker? A. He got the broker to do it. Q. To buy the stock? A. Yes. Q. Through whom did you apply, and through whom was it brought about? A. Through an application to the board of directors to have it dissolved, and they had to go to some court and get a liquidator appointed. They could only do that on my having possession of all of the stock. Q. It was a voluntary dissolution of the company at your solicitation and request? A. Yes, sir. Q. What property did this company own, other than the Henriett and the interests in the Maid of Erin, if any, that you know of? A. Nothing besides its furniture in its office over there, and machinery and stuff on the mine. * * * Q. What, Mr. Moffat, was the consideration that you paid for the deeds that you got from the company, conveying the Henriett mine and the interests in the Maid of Erin; those being the deeds that you have introduced in evidence? A. The return and the cancellation of the stock, under the English laws, before a liquidator could be appointed or could give a deed. That had to be done. Q. Then, if I understand it correctly, you purchased the stock from the stockholders, paying them for the stock, and then you turned it into the company,—the stock to be canceled? A. Yes, sir; and I paid all indebtedness against the company that there was in England. Q. What indebtedness was there, if you remember? A. My recollection is, one item was something like three or four hundred pounds, which I paid. They had rented an office for a term ahead. To sublet it, I lost three or four hundred pounds. I think there were some little clerk bills. I can't tell. My recollection is, it amounted to between two and three thousand dollars,—something like that."

It thus appears from the testimony of the appellant himself that, at the time of the conveyance of the property in controversy to him by the corporation, he was the owner of all the stock of the corporation, and that, as he could not see the propriety of the continuation of the company under these circumstances, he had the entire property of the corporation conveyed to himself. Under such circumstances, the appellant certainly has not established such a superior

equity as entitles him to any relief in a court of equity against a bona fide creditor of the corporation. If a corporation whose stock has all been acquired by one person can, by conveying all of its property to the stockholder in consideration of his surrendering the stock, defeat the creditors of the corporation, it can as well divide its property among its stockholders when they are more numerous; thus defeating the claims of its creditors, and enabling its stockholders, who are really the corporation, to enjoy the benefits of the corporate property regardless of the claims of creditors. That this cannot be done has been firmly established by authoritative decisions of the supreme court of the United States. Curran v. Arkansas, 15 How. 304, 14 L. Ed. 705; Barings v. Dabney, 19 Wall. 1, 22 L. Ed. 90; Angle v. Railway Co., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55. In Curran v. Arkansas, supra, the state of Arkansas was the owner of all the stock of a bank. When the bank became insolvent the state attempted to apply the assets of the bank to its own use, but Mr. Justice Curtis, delivering the judgment of the court, said:

"The plaintiff is a creditor of an insolvent banking corporation. The assets of such a corporation are a fund for the payment of its debts. If they are held by the corporation itself, and so invested as to be subject to legal process, they may be levied on by such process. If they have been distributed among stockholders, or gone into the hands of others than bona fide creditors or purchasers, leaving debts of the corporation unpaid, such holders take the property charged with the trust in favor of creditors, which a court of equity will enforce, and compel the application of the property to the satisfaction of their debts."

In Barings v. Dabney, supra, the state of South Carolina was the sole owner of the stock of a bank which became insolvent. The state, by legislative enactment, appropriated the assets to its own use. This was held to be invalid, for the reasons stated in Curran v. Arkansas, supra.

In Angle v. Railway Co., supra, it was charged in the bill that the Omaha Company became the sole stockholder of the Portage Company, which was indebted to Angle. The Portage Company had property with which its debts could be paid. The Omaha Company, as such sole stockholder, used its power to transfer the property of the Portage Company to itself. The court said:

"Now, what rights, if any, a corporation may have against a sole stockholder who wrongfully causes the transfer of all the property of the corporation to be made to himself, need not be inquired into. It is clear that this stockholder cannot secure this transfer from the corporation to itself of the property of the latter, so as to deprive a creditor of the corporation of the payment of his debt. To put it in another way: The Portage Company, a corporation, owed Angle $200,000. It had property with which that debt could be paid. The Omaha Company became the sole stockholder in the Portage Company. As such sole stockholder, it used its powers to transfer the property of the Portage Company to itself, and its conduct all the way through was marked by wrongdoing. Whatever the Portage Company might do, Angle may rightfully hold the sole stockholder responsible for that payment, which the corporation would have made but for the wrongful acts of such stockholder."

The rights of stockholders upon dissolution of a corporation are to receive the assets remaining after the payment of all the corporate debts. Until the debts are paid, the assets are a trust fund, which

may be followed in the hands of any person having notice of the trust. Wood v. Dummer, 3 Mason, 308, Fed. Cas. No. 17,944; Graham v. Railway Co., 102 U. S. 148, 26 L. Ed. 106; Railway Co. v. Ham, 114 U. S. 582, 5 Sup. Ct. 1081, 29 L. Ed. 235; Manufacturing Co. v. Hutchinson, 11 C. C. A. 320, 63 Fed. 496; Railway Co. v. Evans, 14 C. C. A. 116, 66 Fed. 809; Railway Co. v. Paul, 35 C. C. A. 639, 93 Fed. 878; Hibernia Ins. Co. v. St. Louis & N. O. Transp. Co. (C. C.) 13 Fed. 516; Jones, McDowell & Co. v. Arkansas M. & A. Co., 38 Ark. 17; Thomp. Corp. §§ 375, 1569 et seq., 2951; 2 Story, Eq. Jur. § 1252 et seq.

The appellant, upon his own showing, was the sole owner of all the stock of the corporation, and for this reason saw no necessity for continuing the corporation. Under such circumstances, he clearly took the property charged with the just debts of the corporation; and the appellee Munson was, by the judgment of a court of competent jurisdiction, declared to be a just creditor. When the appellant comes into a court of equity for the purpose of preventing a sale of property, the legal title of which is in him, he must show that his equities are superior to those of the defendant. But he seeks affirmative relief, when, according to his own showing, his legal title rests solely on a conveyance from the corporation, whose sole shareholder he was, while the appellee Munson's claim was in existence and pending in the court for adjudication, and afterwards adjudged to be a valid liability against the corporation. Whether in such case the creditor shall proceed at law or in equity manifestly depends on the facts in the particular case. In the absence of specific liens, the creditors are entitled to share ratably; but in this case there is no suggestion that the corporation was insolvent, or that there are other creditors. We decide nothing more now than that the taking over to himself by a sole stockholder of all the property of a corporation does not affect the right of a creditor of the corporation to subject its property to the payment of his debt. The ground on which the court below dismissed the bill is immaterial. Upon the bill and proofs, its decree dismissing the bill was right, and is affirmed.