GEORGE E. HUTCHERSON, JR., ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Hutcherson v. Commissioner
Docket Nos. 1337-77, 6659-79, 6660-79, 6661-79.
United States Tax Court
T.C. Memo 1984-165; 1984 Tax Ct. Memo LEXIS 513; 47 T.C.M. (CCH) 1421; T.C.M. (RIA) 84165; April 2, 1984. *513 In 1970 and 1971, H owned and operated liquor stores. In 1971, H's liquor licenses expired, and he began to operate two liquor stores in O's name, using O's liquor licenses. O received none of the income produced by the stores, but he reported a portion of such income on his returns for 1971 and 1972. During 1971, H became concerned that his creditors, including the IRS, might obtain his real properties. He executed and recorded a large number of deeds to the properties to D, B, P, and his son, G. The properties were to remain subject to the control of H.H. and W did not file Federal income tax returns for 1970, 1971, or 1972. Held:
(1) The Commissioner's determination of deficiencies in the Federal income tax liabilities of H and of W are sustained. (2) H is liable for the additions to tax for fraud for 1970, 1971, and 1972. Sec. 6653(b), I.R.C. 1954. (3) H and W are liable for the additions to tax for failure to pay estimated tax for 1970, 1971, and 1972. Sec. 6654, I.R.C. 1954. (4) W is liable for the additions to tax for failure to timely file returns for 1970, 1971, and 1972 ( sec. 6651 (a)(1), I.R.C. 1954), and for negligence (sec. 6653(a)). (5) G is not liable as *514 a transferee. Sec. 6901, I.R.C. 1954. (6) G is liable for the additions to tax for failure to timely file his 1972 Federal income tax return (sec. 6651(a)(1)) and for negligence for 1972 (sec. 6653(a)). Cyril David Kasmir, for the petitioners. William P. Hardeman, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and additions to, the petitioners' Federal income taxes: Taxable Year
Sec. 6651(a)
Petitioner
Ended
Deficiency
I.R.C. 1954 [2]
George E.
12/31/72
$10,075.89
$2,417.25
Hutcherson,
Jr.
Estate of
12/31/70
7,335.86
George E.
12/31/71
49,056.99
Hutcherson,
12/31/72
6,085.72
Sr.
Juanita
12/31/70
6,797.66
1,699.42
Hutcherson
12/31/71
48,471.99
12,118.00
12/31/72
5,410.72
1,352.68
Additions to Tax
Sec. 6653(a)
Sec. 6653(b)
Sec. 6654
Petitioner
I.R.C. 1954
I.R.C. 1954
I.R.C. 1954
George E.
$512.14
Hutcherson,
Jr.
Estate of
$3,667.93
$234.75
George E.
24,528.50
1,569.78
Hutcherson,
3,042.86
194.74
Sr.
Juanita
339.88
217.53
Hutcherson
2,423.60
1,551.10
270.54
173.14
The Commissioner also determined the following deficiencies in, and additions to, *515 the Federal income taxes of George E. Hutcherson Enterprises, Inc.: Addition to Tax
Taxable Year Ended
Deficiency
Sec. 6653(b)
8/31/70
$33,812.38
$16,906.19
8/31/71
109,257.68
54,628.84
Finally, in docket No. 6661-79, the Commissioner determined that George E. Hutcherson, Jr., was liable as a transferee for the deficiencies in, and additions to, the tax of George E. Hutcherson, Sr., Juanita Hutcherson, and George E. Hutcherson Enterprises, Inc., to the extent of assets received by him as follows: Liability
Transferor
$28,200
George E. Hutcherson, Sr., Juanita
Hutcherson [3]
8,886
B. F. Hardgrave [4] *516 , transferee of the assets
of George E. Hutcherson, Sr., Juanita
Hutcherson [3]
46,800
George E. Hutcherson Enterprises, Inc.
10,000
B. F. Hardgrave, transferee of the assets of
George E. Hutcherson Enterprises, Inc.
63,339
Willard Poole, transferee of the assets of
George E. Hutcherson Enterprises, Inc.
After a concession by the petitioner in docket No. 1337-77, the issues remaining for decision are: (1) Whether George E. Hutcherson, Sr., and Juanita Hutcherson had unreported income for 1970, 1971, and 1972 as determined by the Commissioner; (2) whether George E. Hutcherson, Sr., fraudulently underpaid his income taxes for 1970, 1971, and 1972 (section 6653(b)); (3) whether the Estate of George E. Hutcherson, Sr., and Juanita Hutcherson are liable for the additions to tax for failure to pay estimated taxes for 1970, 1971, and 1972 (section 6654); (4) whether Juanita Hutcherson is liable for the additions to tax for failure to timely file Federal income tax returns for 1970, 1971, and 1972 (section 6651(a)(1)) and for negligence for such years (section 6653(a)); (5) whether George E. Hutcherson, Jr., is liable as a transferee of the assets of George E. Hutcherson, Sr., Juanita Hutcherson, and George E. Hutcherson Enterprises, Inc.; (6) whether assessment and collection of the transferee liabilities are barred by the statute of limitations; and (7) whether George E. Hutcherson, Jr., is liable for the additions to tax for failure to timely file his 1972 Federal income tax return *517 (section 6651(a)(1)) and for negligence for 1972 (section 6653(a)). FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. George E. Hutcherson, Sr. (Mr. Hutcherson), had his legal residence in Palestine, Tex., when he filed his petition in this case. Mr. Hutcherson died on April 14, 1979, and the Estate of George E. Hutcherson, Sr., Deceased, George E. Hutcherson, Jr., Independent Administrator, was substituted for him as the petitioner in docket No. 6659-79. Juanita Hutcherson had her legal residence in Palestine, Tex., when she filed her petition.George E. Hutcherson, Jr. (George), had his legal residence in Palestine, Tex., when he filed his petitions. Mr. Hutcherson was the sole shareholder of George E. Hutcherson Enterprises, Inc. (Enterprises). At the time the corporation was formed, almost all of Mr. Hutcherson's property was transferred to it. Sometime prior to November 7, 1975, the corporation was dissolved. Mr. Hutcherson became the successor in interest to the corporation and the beneficial owner of the corporate assets. Mr. Hutcherson and his wife, Juanita, filed no Federal income tax returns for 1970, 1971, and 1972. Enterprises *518 filed no Federal income tax returns for its taxable years ended August 31, 1970, and August 31, 1971. The Federal income tax return filed by George for 1972 was dated November 8, 1973, and was received by the Internal Revenue Service on November 13, 1973. At the beginning of the years in issue, Mr. Hutcherson and Enterprises were involved in the retail liquor business. During 1970 and 1971, Mr. Hutcherson operated a liqauor store known as George's Package Store. He did not keep tickets or receipts for individual sales. Revenue Agent Joseph Goodin conducted the examination of Mr. Hutcherson's tax liabilities for 1970, 1971, and 1972; during the examination, Agent Goodin was not provided with any books or records, except a few bank statements, concerning Mr. Hutcherson's liquor business. Mr. Goodin determined the Hutchersons' income from the liquor business by applying a profit markup percentage to the cost of liquor and beer sold. The sales and cost figures were determined from invoices which Mr. Goodin obtained from liquor and beer wholesalers in the East Texas area. Mr. Goodin also determined the liquor markup percentage by comparing the liquor cost with the shelf prices which *519 he had obtained from Mr. Hutcherson's store in February 1970 during an examination of Mr. Hutcherson's tax liabilities for 1967, 1968, and 1969. Beer sales were treated as if they had all been made by the case. During the years in issue, Mr. Hutcherson sold beer for between $4.75 and $5.25 per case; the markup on beer sales vaired from 25 cents to as much as 50 cents per case. The markup on beer sold by the 6-pack was between 15 cents and 20 cents per 6-pack. During 1971, Mr. Hutcherson operated two liquor stores in Palestine, Tax. Mr. Hutcherson's liquor licenses, which had been renewed during 1970 by court order, were to expire on August 31, 1971, and he could not renew them. Mr. Hutcherson and Carroll Overton agreed that Mr. Overton would purchase the liquor stores on or about September 1, 1971. Mr. Overton obtained the necessary liquor licenses from the State of Texas, but he was unable to execute the original purchase agreement because he could not raise the purchase money. Since Mr. Overton had already obtained the liquor licenses, and since Mr. Hutcherson's licenses were about to expire, Mr. Hutcherson decided to continue the liquor store operations in Mr. Overton's name *520 and with Mr. Overton's licenses. Mr. Overton never paid anything for the two liquor stores, and he never took control of them. Mr. Hutcherson and Dot Hinson, who acted as his bookkeeper, secretary, and sales clerk, supervised the operation of the stores; Mr. Hutcherson usually visited them each day. Mr. Overton rarely visited the stores, had no access to the stores' books and records, had no signature authority over the stores' bank accounts, and never received any income or proceeds from the operation of the stores. However, since the stores were operated in Mr. Overton's name using Mr. Overton's liquor licenses, his attorney advised him to report the income from them on his income tax returns. A bookkeeper in the employ of Mr. Hutcherson provided Mr. Overton with information concerning the liquor business income. On his Federal income tax return for 1971, Mr. Overton reported a loss of approximately $150 from the operation of the stores; for 1972, he reported income of about $6,500. Mr. Overton paid all the tax on the liquor store income that he reported, although Mr. Hutcherson subsequently reimbursed him for a portion of such tax. On August 10, 1971, Agent Goodin informed *521 Mr. Hutcherson that his examination of Mr. Hutcherson's tax liabilities for 1967, 1968, and 1969 had disclosed a deficiency of approximately $100,000. During 1971, Mr. Hutcherson also owed approximately $80,000 to several liquor wholesalers. Mr. Hutcherson had reached his borrowing limit at a bank. In an attempt to raise money, he conveyed one parcel of real property to Ken Westerman and another to Cliff Mercer, who were both sales representatives of the liquor wholesalers to whom Mr. Hutcherson was indebted. Although such transfers appeared in the local land records as outright sales, they were merely financing arrangements. The salesmen agreed to borrow money from the bank in their names, as record owners of the properties, using the realty as security. The proceeds of such loans were used to pay Mr. Hutcherson's debts to the wholesalers; Mr. Hutcherson made payments on the loans. The bank was unaware that Mr. Hutcherson had received the loan proceeds and that his conveyances of the properties to the salesmen were designed to raise additional money. As a part of the transactions, Mr. Westerman executed a $45,000 promissory note on April 5, 1971, payable to the order of Enterprises *522 and secured by a vendor's lien on property supposedly conveyed to Mr. Westerman. On January 1, 1972, Enterprises executed a document purporting to convey such note to George. George knew nothing about the note, had no idea why it was transferred, and never received any amount in payment of it. During 1971, Mr. Hutcherson became concerned that his creditors might sue him and levy upon or encumber his property. Consequently, in July of 1971, Mr. Hutcherson and Enterprises began conveying record title to a substantial portion of their real estate holdings to Dot Hinson, B. F. Hardgrave, Willard Poole, and George. Mr. Hutcherson intended to place the property beyond the reach of his creditors. Between July and September of 1971, he executed deeds dated July 23, 1971, which purported to convey the following properties, among others, to Dot Hinson: Ranch house, Caney City
Dowdle Grocery, Caney City
Gas station, Caney City
107 Hamilton Road house Cedar Creek house Willow Bend mobile home 108 Shamrock house Idlewood Club House - 7.14 acres, Hy 79 Such properties were transferred to Ms. Hinson for no consideration, and the properties remained subject to Mr. Hutcherson's control--Ms. *523 Hinson agreed to convey the properties to him or his designee should he so instruct. Subsequently, she signed four or five deeds transferring some of the properties pursuant to Mr. Hutcherson's directions. A dispute regarding the properties developed between Mr. Hutcherson and Ms. Hinson, and in 1975, he brought suit to be declared the owner of the properties and to force Ms. Hinson to account for all rents received from the properties. In 1976, judgment was rendered in favor of Ms. Hinson who was allowed to keep the properties that Mr. Hutcherson had conveyed to her. Mr. Hutcherson also transferred two properties to Willard Poole to keep the properties out of the hands of his liquor creditors.Mr. Poole paid nothing for the properties, and he too agreed to reconvey them at Mr. Hutcherson's request. Mr. Poole subsequently conveyed one of the properties to George and the other to Mr. Overton. Mr. Poole received no consideration for either such transfer. Record title to the following properties, owned by Mr. Hutcherson or Enterprises, was placed in George's name: Value on
Record
Property
Grantor
Grantee
Deed
Deed
Date
Date
Date
1.092 acre
Mr. Hutcherson
B. F. Hardgrave
7/23/71
$8,886
9/7/71
parcel
1.092 acre
B. F. Hardgrave
George
2/16/72
2/16/72
parcel
North Church
Enterprises
B. F. Hardgrave
7/23/71
10,000
9/7/71
Street lot
North Church
B. F. Hardgrave
George
2/14/72
2/15/72
Street lot
Lot 9
Mr. Hutcherson
George
7/23/71
1,500
9/17/71
McDonald
Enterprises
George
7/23/71
1,800
9/17/71
Survey lot
Cattlemen's
Enterprises
W. Poole
7/23/71
63,339
9/3/71
Club
Cattlemen's
W. Poole
George
2/11/72
2/15/72
Club
M. Main
Mr. Hutcherson
George
10/15/71
Parcel 1
10/15/71
16,000
League lot
Parcels
2-3
10,700
Parcels 1,
2, 3
Parcel 1
George
Dot Hinson
3/28/72
3/29/72
Parcels 2-3
Mr. Hutcherson
C. L. Carroll
7/22/76
9/30/77
Parcels 2-3
C. L. Carroll
Vernon Calhoun
9/20/79
9/20/79
Packing Co.
*524 George gave no consideration for the transfers of property to him and was not aware of them at the time they occurred. He subsequently learned about the transfers from an acquaintance who told him that, according to the newspapers, George had purchased a lot of property. George conveyed parcel 1 of the M. Main League lot to Dot Hinson at the direction of his father. George never executed deeds purporting to reconvey parcels 2 and 3 of such lot to his father. In May 1973 and in September 1975, Mr. Hutcherson told Agent Goodin that he had filed tax returns for himself and Enterprises for the years in issue. The Commissioner issued a notice of deficiency for 1970, 1971, and 1972 to Mr. Hutcherson and a separate notice for the same years to Mrs. Hutcherson. The Commissioner determined that the Hutchersons had unreported income from George's Package Store for 1970 and 1971, unreported income from the Carroll Overton Package Stores for 1971 and 1972, unreported rental income for 1970, 1971, and 1972, and an unreported long-term capital gain for 1971 realized primarily on the liquidation of Enterprises.The Commissioner allocated one-half of the total income to Mr. Hutcherson. The Commissioner *525 determined that Mr. Hutcherson was liable for the addition to tax for fraud (section 6653(b)) for 1970, 1971, and 1972, and that both Mr. and Mrs. Hutcherson were liable for the addition to tax for failure to pay estimated tax (section 6654) for 1970, 1971, and 1972. The Commissioner determined that Mrs. Hutcherson was liable for the additions to tax for failure to file timely Federal income tax returns for 1970, 1971, and 1972 (section 6651(a)(1)) and for negligence for such years (section 6653(a)). The Commissioner determined a deficiency in the tax of George for 1972. In his notice, the Commissioner also determined that George was liable for the additions to tax for failure to file timely his 1972 return (section 6651 (a)(1)) and for negligence for 1972 (section 6653(a)). In seven separate notices of liability, the Commissioner determined that George was liable as a transferee of the assets of Mr. Hutcherson, Juanita Hutcherson, and Enterprises. OPINION The first issue for decision is whether George E. Hutcherson, Sr., and Juanita Hutcherson had unreported income for 1970, 1971, and 1972 as determined by the Commissioner. The Commissioner determined that the Hutchersons received *526 income from four sources during the years in issue; the petitioners have challenged the determination concerning each source. The petitioners bear the burden of disproving the correctness of the Commissioner's determination of deficiency. Rule 142(a), Tax Court Rules of Practice and Procedure[5]; Welch v. Helvering,290 U.S. 111 (1933). The petitioners do not challenge the Commissioner's use of the markup method for reconstructing the income that they received from George's Package Store during 1970 and 1971. See Webb v. Commissioner,394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. Rather, they assert that the Commissioner used excessive markup percentages to determine gross profit on liquor and beer sales. The Commissioner determined that Mr. Hutcherson sold beer for 1.1262 times its cost and liquor for 1.349 times its cost. The petitioners rely upon the testimony of Ms. Hinson in support of their argument that such markups were excessive. Ms. Hinson testified that the liquor markup as reflected by shelf prices was approximately 30 to 35 percent. However, she asserted that many *527 customers received quantity discounts from the shelf price by purchasing up to a case of liquor at a time. Mr. Hutcherson did not keep records of individual sales, and he provided few, if any, records concerning the liquor store to Agent Goodin. There is no evidence to corroborate Ms. Hinson's estimate of the percentage of liquor sales made at a discount, nor have the petitioners presented any evidence concerning the amount of the discounts. From the record, it appears to us that the Commissioner computed the liquor markup from the only available evidence; the obligation to keep records that might more accurately reflect the liquor income was Mr. Hutcherson's. Sec. 6001. Having neglected his duty to do so, he cannot now condemn the Commissioner's computation for failing to consider the effect of his undocumented transactions. Webb v. Commissioner,394 F.2d at 373. We conclude that the petitioners have not proved that the liquor markup figure utilized by the Commissioner was incorrect. The petitioners claim that the beer markup used by the Commissioner was excessive. While Ms. Hinson testified that the usual markup was 25 cents per case (between 5.00 and 5.56 percent depending *528 on the cost of the beer), she also testified that the markup could be as much as 50 cents per case (between 10.00 and 11.11 percent) during special sales offered by the distributors. Moreover, Ms. Hinson testified that, on sales by the individual 6-pack, the markup was between 15 and 20 cents (between 13.33 and 16.00 percent per case of four 6-packs). Once again, Mr. Hutcherson's lack of records makes it impossible for us to determine what portion of beer sales were by the case. The Commissioner's determination assumed that all sales were by the case, and the figure he chose was less than the maximum markup charged by Mr. Hutcherson on cases sold by the 6-pack. The petitioners have not sustained their burden of proving that the beer markup percentage utilized by the Commissioner was incorrect. Accordingly, we sustain the Commissioner's determination regarding the markup percentage on beer sales. The petitioners made no other challenges to the Commissioner's determination of the income derived by the Hutchersons from George's Package Store during 1970 and 1971; hence, we sustain the Commissioner's determination of such income. The Commissioner also determined that the income derived *529 from the Carroll Overton liquor stores during 1971 and 1972 was attributable to the Hutchersons. The petitioners appear to argue that because Mr. Overton paid the tax on a portion of such income, [6] *530 the Hutchersons did not receive it. The petitioners' argument is unpersuasive. There is no question but that Mr. Hutcherson continued to operate the liquor stores, using Mr. Overton's licenses because his own had expired. He did not relinquish ownership or control of the stores, nor did he distribute any of the stores' income to Mr. Overton. Such income was earned by Mr. Hutcherson and is attributable to the Hutchersons for Federal income tax purposes. See Commissioner v. Culbertson,337 U.S. 733 (1949); Lucas v. Earl,281 U.S. 111 (1930); Markosian v. Commissioner,73 T.C. 1235 (1980); Wesenberg v. Commissioner,69 T.C. 1005 (1978). The Commissioner determined that the Hutchersons received unreported rent income from specified properties during 1970, 1971, and 1972. The petitioners do not challenge the 1970 determination, but they claim that in 1971, Mr. Hutcherson transferred all the properties to Ms. Hinson, George, Mr. Hardgrave, and Mr. Poole. With respect to the properties transferred to Ms. Hinson, the petitioners also assert that Ms. Hinson received the rents, deposited the income to the Dot Hinson Rent Account, and reported the rents as income on her 1971 and 1972 returns. Moreover, the petitioners observe that as a result of the 1975 lawsuit that Mr. Hutcherson rought against Ms. Hinson, she was allowed to retain title to the properties transferred to her. Thus, the petitioners conclude that the rents earned from the properties that Mr. Hutcherson transferred to Ms. Hinson, George, Mr. Poole, and Mr. Hardgrave are not taxable to the Hutchersons. The issue of two is the owner of property for income tax purposes is a question of fact which must be determined upon an examination of all the facts and circumstances. Schoenberg v. Commissioner,302 F.2d 416 (8th Cir. 1962), *531 affg. a Memorandum Opinion of this Court; Snyder v. Commissioner,66 T.C. 785 (1976)."The crucial question remains whether the assignor retains sufficient power and control over the assigned property or over the receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes." Commissioner v. Sunnen,333 U.S. 591, 604 (1948); see also Helvering v. Horst,311 U.S. 112 (1940); Helvering v. Clifford,309 U.S. 331 (1940). In the present case, Mr. Hutcherson's control over the properties continued undiminished after the execution of the deeds. Mr. Hutcherson deeded the properties to his nominees in an attempt to place the properties beyond the reach of his creditors. See Schoenberg v. Commissioner,supra at 419. Mr. Hutcherson's grantees gave him nothing in consideration for the conveyances. They acknowledged that they held the properties for his benefit and subject to his control. They agreed to convey the properties back to Mr. Hutcherson or to a third person should Mr. Hutcherson so direct; George, Mr. Poole, Mr. Hardgrave, and Ms. Hinson all executed deeds of certain of the properties at Mr. Hutcherson's behest. George was not even aware *532 of the transfers to him until an acquaintance told him that the local paper had reported George's land purchases. Subsequent to the conveyance of the M. Main League lot to George, Mr. Hutcherson executed a deed conveying parcels 2 and 3 of the such lot to a third party, even though George had never reconveyed such properties to him. Mr. Hutcherson structured his conveyances to retain dominion and control over the properties. Ms. Hinson testified that she received, deposited, [7] and reported as income the rentals generated by some of the properties, but even if her testimony is true, it does not make such income hers for tax purposes. Helvering v. Horst,supra.Moreover, the refusal of the Texas court of force Ms. Hinson to reconvey the properties received by her to Mr. Hutcherson has no effect on the Federal income tax consequences of income generated by such properties prior to the court's decree. The judgment for Ms. Hinson was based on the equitable "clean hands" defense. See Stone v. Parker,446 S.W. 2d 734 (Tex. Civ. App. 1969). We conclude that Mr. Hutcherson's execution of the deeds to the properties in issue were insufficient to shift from the Hutchersons the incidence *533 of taxation upon the rentals such properties generated. Accordingly, we sustain the Commissioner's determination with respect to the rental income. The Commissioner determined that the Hutchersons received unreported capital gains upon the liquidation of Enterprises and upon the sale of a house by Mr. Hutcherson and Ms. Hinson during 1971. The only evidence adduced with respect to such issue was a statement in the complaint filed by Mr. Hutcherson in the action against Ms. Hinson to the effect that the corporation had been dissolved, that Mr. Hutcherson was a successor in interest to it, and that he was a beneficial owner of the corporate assets. The petitioners bore the burden of disproving the correctness of the Commissioner's determination, and they have utterly failed to do so. The Commissioner's determination regarding the 1971 capital gain is sustained. In summary, we sustain the Commissioner's determination of the amount of the Hutchersons' unreported income for 1970, 1971, and 1972. The second issue for decision is whether Mr. Hutcherson fraudulently underpaid his income tax for 1970, 1971, *534 and 1972. Sec. 6653(b). The Commissioner bears the burden of proving by clear and convincing evidence that Mr. Hutcherson fraudulently underpaid his income tax due for one or more of the years in issue. Sec. 7454(a); Rule 142(b); Levinson v. United States,496 F.2d 651 (3d Cir. 1974); Miller v. Commissioner,51 T.C. 915, 918 (1969). The Commissioner may prove fraud if he shows that Mr. Hutcherson intended to evade taxes which he knew or believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,supra;Acker v. Commissioner,26 T.C. 107 (1956). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed ( Beaver v. Commissioner,55 T.C. 85, 92 (1970)), but fraud may be proved by circumstantial evidence, since direct proof of the taxpayer's intent is often not available. The requisite fraudulent intent may be shown by the taxpayer's entire course of conduct. *535 Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). We have concluded that the Commissioner has sustained his burden of proving that Mr. Hutcherson underpaid his tax for each of the years in issue. The petitioners did not contest the Commissioner's determination of the amounts of income generated by the rental properties or the Carroll Overton stores, and we have determined that such amounts were taxable to the Hutchersons. Mr. Hutcherson paid no tax on his community share of such income. The Commissioner contends that such underpayments were attributable to Mr. Hutcherson's fraud. The Commissioner observes that neither Mr. Hutcherson nor Enterprises filed returns for the years in issue, although Mr. Hutcherson twice told Agent Goodin that such returns were filed. The Commissioner points out that except for a few bank statements, no books or records relating to the years in issue were provided to Agent Goodin during the conduct of the audit and that Mr. Hutcherson did not keep records of individual liquor sales. Finally, the Commissioner argues that Mr. Hutcherson's fraud is demonstrated by his execution of a great number of *536 deeds in an attempt to place his realty beyond the reach of his creditors. The Commissioner has presented a compelling case in support of his determination of fraud. The underpayment of tax, coupled with a failure to file returns, constitutes persuasive evidence of fraud. Harper v. Commissioner,54 T.C. 1121, 1139 (1970); Marsellus v. Commissioner,544 F.2d 883, 885 (5th Cir. 1977), affg. a Memorandum Opinion of this Court; Stoltzfus v. United States,398 F.2d at 1005. Mr. Hutcherson also twice told Agent Goodin that he had filed income tax returns for the years in issue when in fact he had not done so, and he provided Agent Goodin with virtually no records during the investigation of his tax liabilities for the years in issue. Conduct designed to mislead the Commissioner's agents and to conceal income strongly evidences an intent to evade tax. Estate of Upshaw v. Commissioner,416 F.2d 737, 741 (7th Cir. 1969), affg. a Memorandum Opinion of this Court; Smith v. Commissioner,32 T.C. 985, 987 (1959). Finally, Mr. Hutcherson executed a great number of deeds in an attempt to protect his real estate holdings from his creditors. At the trial, the parties disputed whether Mr. Hutcherson *537 specifically intended to place his property beyond the reach of the IRS. We have found from Agent Goodin's testimony that he informed Mr. Hutcherson in August of 1971 that the audit of the 1967, 1968, and 1969 taxable years had resulted in a preliminary determination of a $100,000 deficiency. At such time, Mr. Hutcherson was still executing deeds to his property, and he had not yet recorded them. He was thus aware that the IRS was one of his creditors during the period in which he was executing and recording deeds. Moreover, in July 1971, when he began executing the deeds to his property, he knew that he had not filed his 1970 return nor paid his 1970 tax liability. Finally, subsequent transfers of the properties occurred at his direction during 1972, by which time Mr. Hutcherson was definitely aware of the Commissioner's claim against him for 1967, 1968, and 1969. We conclude that Mr. Hutcherson executed and recorded the fictitious deeds of his property in an attempt to frustrate the Commissioner's collection of his tax liabilities. Mr. Hutcherson's attempts, during the years in issue, to evade payment of the taxes attributable to earlier years strongly suggests that his motivation *538 for underpaying his taxes for the years in issue was fraudulent. In light of all of the evidence amassed by the Commissioner, we hold that the Commissioner has amply sustained his burden of proving, by clear and convincing evidence, that Mr. Hutcherson fraudulently underpaid his income taxes for 1970, 1971, and 1972. The third issue for decision is whether the estate of Mr. Hutcherson and Juanita Hutcherson are liable for the addition to tax for failure to pay estimated tax for 1970, 1971, and 1972. Sec. 6654. The fourth issue for decision is whether Juanita Hutcherson is liable for the additions to tax for failure to timely file Federal income tax returns for 1970, 1971, and 1972 (section 6651(a)(1)), and for negligence for such years (section 6553(a)).Although the petitioners bore the burden of disproving the correctness of the Commissioner's determinations with respect to both issues (Rule 142(a)), they failed to introduce any evidence at all with respect to such issues, nor did they address such issues in their brief. Accordingly, we sustain the Commissioner's determinations with respect to both the third and fourth issues. The fifth issue for decision is whether George is *539 liable as a transferee of the assets of Mr. Hutcherson, Juanita Hutcherson, and Enterprises. The Commissioner determined that George was a transferee of Mr. Hutcherson, Juanita Hutcherson, and Enterprises, receiving from them the $45,000 Westerman note, the 1,092-acre parcel, the North Church Street lot, lot 9, the McDonald Survey lot, the Cattlemen's Club, and the M. Main League lot (parcels 1, 2, and 3).
Section 6901(a) provides that when there has been a transfer of property, the liability of the transferee, at law or in equity, for the taxes of the transferor may be assessed, paid, and collected in the same manner as in the case of the taxes with respect to which the liability was incurred. Such provision furnishes the Commissioner with a summary remedy for collecting from the transferee. Commissioner v. Stern,357 U.S. 39, 42-45 (1958); Pierce v. Commissioner,61 T.C. 424, 432 (1974); Albert v. Commissioner,56 T.C. 447, 449 (1971). Prior to the enactment of the predecessor of section 6901(a), the Commissioner was required to bring a bill in equity or institute an action at law to enforce a transferee's liability, and the use of such procedures proved cumbersome. The predecessor *540 of section 6901(a) was enacted to provide a simplified procedure by which the Commissioner could enforce a transferee's liability for the taxes of his transferor. Phillips v. Commissioner,283 U.S. 589, 596 (1931). The transferee provision, however, merely provides a procedure by which the Commissioner may collect taxes. The existence and extent of the liability of a transferee of property of the taxpayer is determined by reference to the applicable State law, which specifies the necessary conditions for the imposition of such liability. [8] *541 Commissioner v. Stern,supra;Scott v. Commissioner,70 T.C. 71, 79 (1978); Estate of Miller v. Commissioner,42 T.C. 593, 598-599 (1964). The Commissioner has the burden of proving all the elements of transferee liability except the existence of a deficiency in the transferor's tax. Sec. 6902(a); Rule 142(d). Texas law provides a creditor with two means of attacking his debtor's conveyance of property: generally, a transfer of real property is void with respect to a creditor if such transfer was intended to delay, hinder, or defraud any creditor, or if it left the debtor without enough property, excluding the property transferred, to pay his debts. Texas Bus. and Com. Code Ann. Secs. 24.02, 24.03 (Vernon 1968). For the purpose of setting aside a transferor's subsequent conveyances, the United States is deemed a creditor from the date the transferor's obligation to pay taxes accrued. Short v. United States,395 F. Supp. 1151, 1154 (E.D. Tex. 1975); *542 Coca-Cola Bottling Co. of Tucson v. Commissioner,37 T.C. 1006 (1962), affd. 334 F.2d 875 (9th Cir. 1964). Where a grantor executed a deed of realty to delay, hinder, or defraud his creditors, but with no intention that the deed should operate as a conveyance of title, and where the lack of such intention was manifested by the grantor's retention of the deed, the Texas courts have found that the deed was not delivered, hence not executed, and that such deed, even though recorded, conveyed no interest. Koppelmann v. Koppelmann,94 Tex. 40, 57 S.W. 570 (1900); Driskill v. Forbes,566 S.W. 2d 90 (Tex. Civ. App. 1978). Whether a deed has been properly delivered is a question of the grantor's intent ( Thornton v. Rains,157 Tex. 65, 299 S.W. 2d 287 (1957)), and such intent is not proved by evidence of the grantor's intent to defraud his creditors ( Koppelmann v. Koppelmann,supra). In the present case, the Commissioner has failed to prove that Mr. Hutcherson intended to convey any interest to George or to George's predecessors in title. Indeed, the evidence presented supports the opposite conclusion: that Mr. Hutcherson never intended to divest himself of dominion and control over the *543 properties. Thornton v. Rains,supra.
In support of his determination that Mr. Hutcherson and Juanita Hutcherson were taxable on the rental income generated by the transferred properties, the Commissioner argued that Mr. Hutcherson retained control over such properties, and we sustained the Commissioner's position; we held that the Hutchersons were taxable on such rentals because of Mr. Hutcherson's continuing control over the properties. For example, the record shows that George never received any of the proceeds of the Westerman note; George transferred parcel 1 of the M. Main League lot to Ms. Hinson at his father's direction on March 28, 1972; Mr. Hutcherson executed a deed of parcels 2 and 3 of such lot to C. L. Carroll in 1976 even though George, nominally the owner of the parcels, had never reconveyed the parcels to Mr. Hutcherson. With respect to these properties, it is clear that George was merely a nominee title holder; the Commissioner has failed to prove that George's status differed with respect to the remaining parcels. To impose transferee liability, the Commissioner must show more than a technical transfer of record title. Hatch v. Morosco Holding Co.,50 F.2d 138 (2d Cir. 1931). *544 A person who merely takes naked record title to property as the nominee of the "transferor" and who has no beneficial interest in such property is not liable as a transferee. See Estate of Work v. Commissioner,16 T.C. 863, 869 (1951); Tomfohr v. Commissioner,44 B.T.A. 730, 734 (1941); Burdick v. Commissioner,24 B.T.A. 1297, 1303-1304 (1931); Rolnick v. Commissioner,20 B.T.A. 989, 992 (1930). Accordingly, we hold that George is not liable as a transferee. Our resolution of the transferee liability issue obviates the need for resolution of the question whether the statute of limitations bars the assessment and collection of the transferee liabilities. The seventh issue for decision is whether George is liable for the additions to tax for failure to timely file his 1972 Federal income tax return (section 6651(a)(1)) and for negligence for 1972 (section 6653(a)). The petitioners bear the burden of disproving the correctness of the Commissioner's determination on this issue. Rule 142(a). George presented no evidence to rebut the Commissioner's determination that his 1972 underpayment was due to negligence, and we sustain the Commissioner's determination with respect to such issue. *545 Section 6651(a) provides for an assessment of an addition to the tax where there has been a failure to file a tax return on or before its due date. To avoid the addition to the tax, the taxpayer must make an affirmative showing that a reasonable cause existed for the failure to file timely and that it was not the result of willful neglect. When George was asked why his 1972 return was filed late, he stated that he really did not know. He added, without elaboration, that his delinquency might have been caused by my "not having my figures together" or by the fact that his father was helping him with his return. Such sketchy testimony, not really amounting to an excuse at all, falls far short of demonstrating that George exercised ordinary business care and prudence in the filing of his return. See Paula Construction Co. v. Commissioner,58 T.C. 1055, 1061 (1972), affd. per curiam without published opinion 474 F.2d 1345 (5th Cir. 1973). Accordingly, we sustain the Commissioner's determination with respect to this issue. Decisions will be entered under Rule 155.
Footnotes
1. The cases of the following petitioners are consolidated herewith: Estate of George E. Hutcherson, Sr., Deceased, George E. Hutcherson, Jr., Independent Administrator, docket No. 6659-79; Juanita Hutcherson, docket No. 6660-79; George E. Hutcherson, Jr., Transferee of Willard Poole, Transferee of George E. Hutcherson Enterprises, Inc.; Transferee of B. F. Hargrove, Transferee of George E. Hutcherson Enterprises, Inc.; Transferee of George E. Hutcherson Enterprises, Inc.; Transferee of B. F. Hargrove, Transferee of George E. Hutcherson, Sr.; Transferee of B. F. Hargrove, Transferee of Juanita Hutcherson; Transferee of George E. Hutcherson, Sr., and Transferee of Juanita Hutcherson, docket No. 6661-79.↩
2. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
3. The liabilities for transfers from Juanita Hutcherson were assessed in separate notices. ↩
4. The notices of liability, the petition, and subsequent proceedings regarding docket No. 6661-79 refer to B. F. Hargrove. Evidence in the record clearly indicates that his correct name was B. F. Hardgrave, and we shall so refer to him.
5. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩
6. The Commissioner determined that the income reported by Mr. Overton reflected a substantial deduction for payments made to Mr. Hutcherson. In determining the income that the Hutchersons derived from the stores, the Commissioner added such payments to the amounts reported by Mr. Overton.The petitioners have not specifically contested such adjustment, nor have they adduced evidence to disprove it.
7. There is no evidence that Ms. Hinson retained the rentals for her own benefit.↩
8. Neither party briefed the applicability of Texas law to the transferee issue. The Commissioner stated that he relied upon sections 24.02 and 24.03 of the Texas Business and Commercial Code Annotated (Vernon 1968), but he did not analyze nor discuss such sections at all. Nor did the petitioners discuss the applicability of the Texas fraudulent conveyance statutes to the facts of the present case. Minimal research would have disclosed Commissioner v. Stern,357 U.S. 39 (1958), Scott v. Commissioner,70 T.C. 71 (1978), and Estate of Miller v. Commissioner,42 T.C. 593↩ (1964), all emphasizing the importance of State law in transferee cases. The failure of the parties to present and discuss the applicable Texas law made it necessary for the Court to investigate such matter. This Court has a large backlog of cases, and when the Court must perform research that should have been performed by the parties, our workload is made more difficult.